QWEST INTERNATIONAL COMMU-
NICATIONS, INC. (and/or Qwest
Communications International, Inc.),
Qwest Communications Corp., and SP
Construction Services, Inc., Petition-
ers,

v.

AT & T CORP. and AT & T Commu-
nications, Inc. of the Southwest,
Inc., Respondents.

No. 03–0825.

Supreme Court of Texas.

June 24, 2005.

Michael J. Clark and Curtis J. Kurhajec, Thornton Summers Biechlin Dunham & Brown, C. Mark Stratton and Sue Melissa Lee, Henslee, Fowler, Hepworth & Schwartz, LLP, Austin, for other interested parties.

Thomas C. Wright, Julia Leigh Kurtz, Wright Brown & Close, LLP, Houston, Molly H. Hatchell, Mike A. Hatchell, Locke Liddell & Sapp LLP, Delno J. Grosenheider, Joseph Loiacono II, Wilson Grosenheider Moore & Jacobs, J. Stephen Ravel, Michael Shaunessy, Bickerstaff Heath Smiley Pollan Kever & McDaniel, Austin, Bruce A. Featherstone, and Nancy C. Shea, Featherstone & Shea, Denver, CO, for Petitioners.

John K. Schwartz, Jennifer Lea Mathis-Volk and Barbara M. Ellis, Locke Liddell & Sapp, LLP, Houston, Joseph Latting, Austin, for Respondents.

## PER CURIAM.

We must decide whether a corporate policy that promotes "a hurried pace" and results in accidentally cutting a competitor's fiber-optic cables is legally sufficient to support an award of exemplary damages. Under the facts presented here, we hold it is not. We reverse that portion of the court of appeals' judgment affirming the award of such damages. 114 S.W.3d 15, 23–28.

Qwest International Communications ("Qwest") and AT & T Corporation ("AT & T") are competitors in fiber-optic communications. During late 1997, Qwest laid fiber-optic cables for itself, GTE, and others in utility rights-of-way between Seguin and Austin, Texas. On three occasions, cable-laying crews for Qwest or its subcontractors cut AT & T's fiber-optic cable.

A jury found negligence on all three occasions, and that Qwest was liable for all three as it controlled its subcontractors' activities. The jury awarded actual damages (representing the cost of temporary and permanent repairs and rerouting) of $205,187.69 for the first cut, $339,809.98 for the second, and $143,583.83 for the third. The jury also found Qwest acted with malice in the first and third cuts, and awarded exemplary damages of $350 million. The trial court reduced the latter to $467,808.91 pursuant to statute.[1] Tex. Civ. Prac. & Rem.Code § 41.008(b). The court of appeals affirmed, 114 S.W.3d 15, 23–28,

---

1. The trial court calculated economic damages by adding damages for the first cut and 20 percent of the third cut (representing Qwest's proportionate responsibility), and doubling the total. Neither party challenges this calculation.

and Qwest petitioned this Court for review of the exemplary damages award only.

■ To recover exemplary damages, AT & T had to present clear and convincing evidence that (as defined in the court's charge) Qwest's conduct "when viewed objectively from the standpoint of [Qwest] at the time of its occurrence involve[d] an *extreme degree of risk,* considering the probability and magnitude of the potential harm to others." *See* Act of April 20, 1995, 74th Leg., R.S., ch. 19, § 1, 1995 Tex. Gen. Laws 108, 109 [2] (amended 2003) (current version at Tex. Civ. Prac. & Rem. Code § 41.001(11)) (emphasis added); *see also* Tex. Civ. Prac. & Rem.Code § 41.003(a)(2) & (b). As clear and convincing evidence was required, we review all the evidence in the light most favorable to the jury's finding, taking into account contrary undisputed facts, to determine whether reasonable jurors could have formed a firm belief or conviction regarding malice. *Southwestern Bell Tel. Co. v. Garza,* 164 S.W.3d 607, 619 (Tex.2004).

■ In addition, AT & T had to show that Qwest as a corporation (rather than individual employees) is liable for exemplary damages. A corporation is liable for exemplary damages only if it (1) authorizes or ratifies an agent's malice, (2) maliciously hires an unfit agent, or (3) acts with malice through a vice principal. *See Mobil Oil Corp. v. Ellender,* 968 S.W.2d 917, 921–22 (Tex.1998); *Hammerly Oaks, Inc., v. Edwards,* 958 S.W.2d 387, 391 (Tex.1997). In this case, AT & T relies on the first and third grounds.

■ We hold the evidence is legally insufficient to show either. Both cuts on which the malice findings were based resulted from the decisions of lower-level employees on-site. In the first, a Qwest foreman on-site told a plow driver to continue digging after an AT & T observer requested a delay to retrieve a tool and find the exact location of AT & T's cable. The other cut occurred when, according to the subcontractor, the AT & T cable "ended up where I didn't think it was supposed to be." In neither case did Qwest corporate officers authorize or ratify the cut, or know about these circumstances until after the accidents occurred.

■ AT & T's arguments and evidence on exemplary damages focused on policy decisions made at higher levels, not on negligent application of those policies by on-site employees. In affirming the award of exemplary damages in this case, the court of appeals found Qwest acted maliciously by "fostering a corporate environment of rapid cable-laying operations in the same rights-of-way and in close proximity to AT & T's cable." 114 S.W.3d at 26. As to the latter, Qwest had little choice; it was undisputed that (as the court of appeals noted) the narrow width of the utility easements here "dictates that underground cables be buried near to one another." *Id.* at 21.

As to the former, a general corporate policy to work rapidly is insufficient (without more) to support exemplary damages. Few businesses do not have such policies, as quick work is often a matter of survival in a competitive market, both for the one doing the work and the customers who want it done. Such policies cannot, standing alone, constitute malice.

As AT & T's claim related to issuance of the policies, not negligent application of them by on-site employees, exemplary damages were appropriate only if those responsible for adopting the policies knew they posed an extreme degree of risk. *See* Act of April 20, 1995, 74th Leg., R.S., ch.

---

**2.** This was the statute in effect at the time of trial.

19, § 1, 1995 Tex. Gen. Laws 108, 109 (amended 2003). In this case, there was evidence that fiber-optic cables are fragile and expensive, and if damaged may cause thousands of customers to lose service. But it was undisputed that cable cuts are frequent and anticipated occurrences in the industry, that AT & T's cables are cut about 27 times annually, and that most AT & T calls on the lines here were rerouted in a matter of seconds.[3]

There was also evidence that Qwest was facing substantial delay penalties because the cable project was behind schedule; that its workers were primarily new hires with limited training or experience who worked long shifts; and that upper management was "pushing to get the job done." What is lacking is clear and convincing evidence that Qwest's upper management had actual knowledge that a policy to lay cables rapidly posed a degree of risk that was extreme; knowledge of a remote possibility of serious injury or a high probability of minor injury was not enough. *Id.* (requiring extreme degree of risk in both probability and magnitude of harm); *see Lee Lewis Constr., Inc. v. Harrison,* 70 S.W.3d 778, 785 (Tex.2001); *Transp. Ins. Co. v. Moriel,* 879 S.W.2d 10, 21–23 (Tex.1994); *Wal–Mart Stores, Inc. v. Alexander,* 868 S.W.2d 322, 326 (Tex. 1993). Nor is there evidence that they proceeded with the construction in conscious disregard of such a risk. Based on all the evidence, reasonable jurors could have formed a firm belief that Qwest acted with negligence, but not malice.

We recognize that when haste risks waste to life and limb, it may justify exemplary damages. But we also recognize that in a competitive global economy, time is often of the essence for businesses, jobs,

and national productivity and prosperity. The Legislature's balance of such-competing interests requires courts to adhere to the standard that exemplary damages are available only if a corporation ignores an extreme risk of harm.

Without hearing oral argument, we grant the petition for review, and reverse that portion of the court of appeals' judgment awarding exemplary damages. Tex. R.App. P. 59.1.

---

**3.** At worst, there was some evidence that some customers lost service for about three hours.