COURT
OF APPEALS

                                       SECOND
DISTRICT OF TEXAS

                                                   FORT
WORTH

 

 

                                        NO.
2-04-315-CV

 

 

JOHN C. WILEN                                                                  APPELLANT

 

                                                   V.

 

WILLIAM FALKENSTEIN                                                           APPELLEE

 

                                              ------------

 

            FROM THE 393RD
DISTRICT COURT OF DENTON COUNTY

 

                                              ------------

 

                                             OPINION

 

                                              ------------

 

I.  Introduction

 








This appeal arises from a trespass suit brought
by Appellee William Falkenstein against his neighbor, Appellant John C. Wilen,
for causing a tree service to trim a tree on Falkenstein=s
property.  The trial court entered
judgment in accordance with the jury=s
verdict, awarding Falkenstein $5,300.00 in actual damages, $18,000.00 in
exemplary damages, and attorney=s fees
of $29,700.00.  Wilen raises eight issues
on appeal, challenging the sufficiency of the evidence to support the jury=s
findings of trespass, actual damages, and exemplary damages; challenging the
attorney=s fees
award; and claiming charge error. 
Because we hold that no legal basis exists for an attorney=s fees
award to Falkenstein, we will modify the judgment by deleting the attorney=s fees
award, and as modified, we will affirm the trial court=s
judgment.

II.  Factual Background

A.     Falkenstein=s
Testimony

Falkenstein testified that he and Wilen were
neighbors.  When Falkenstein moved into
his house in Frisco, Texas, he had Fannin Tree Farm plant thirty trees on his
property, including two treesCone on
each side of the poolCthat matched.  As the trees grew, Wilen informed Falkenstein
that one of the matched trees impeded Wilen=s view
from his balcony of the subdivision=s
clubhouse.  Once or twice, Wilen
suggested to Falkenstein that the tree service Wilen used come over to
Falkenstein=s property and trim the
view-blocking tree; Wilen offered to pay the cost of having this tree
trimmed.  Falkenstein declined this offer
and told Wilen that he would take care of his own trees.  In October 2002, Falkenstein had his trees
trimmed in an effort to appease Wilen. 








About a month later, Falkenstein left town for a
two-week vacation.  Falkenstein gave
Wilen his vacation itinerary and emergency contact phone numbers.  Upon returning home after his vacation,
Falkenstein Anoticed a big hunk of [his] tree
was missing.@ 
No tree branches were on the ground around the tree, so Falkenstein
concluded that someone must have cut his tree. Because the tree that had been
cut was the view-blocking tree, Falkenstein asked Wilen if he had cut the tree.  Wilen said that he had not personally cut the
tree and claimed that he did not know anything about the tree cutting.
Falkenstein asked Wilen for the name of the tree service that Wilen used, but
Wilen refused to provide it.  Wilen
offered to pay the cost of completely cutting down the tree, but he would not
agree to pay to replace the tree. 

Falkenstein
introduced into evidence photographs of the trimmed tree.   B.     Wilen=s
Testimony

Wilen testified that he used TLS Landscaping to
trim his trees.  He said that when TLS
Landscaping performed work at his home in the spring or summer of 2002, he told
Tom Sawyers of TLS Landscaping that in the future if he was going to be
performing trimming work at Wilen=s house,
he should talk to Falkenstein about trimming his trees, too.  Wilen said that he mentioned a specific tree
in Falkenstein=s yard that was not on the
property line.








Wilen testified that one morning in November
while Falkenstein was on vacation, he received a call from Sawyers at TLS
Landscaping.  Tom said that his employees
were coming to Wilen=s house.  Scott Story and Hank Eugenio of TLS
Landscaping arrived at Wilen=s house,
and Story asked Wilen which trees needed to be trimmed.  Wilen pointed to the view-blocking tree in
Falkenstein=s yard near the pool.  Story asked how much needed to be trimmed,
and Wilen told him to come up to the balcony to take a look.  Wilen testified that thereafter the
view-blocking tree was cut without any direction or suggestion by him, but he
admitted that he answered the two questions that Story askedCwhich
tree to trim and how much to trim it. 
Wilen testified that he Aassumed@ that
Story had permission to trim Falkenstein=s tree. 

Wilen said that he did not enter Falkenstein=s
property and denied seeing the tree being cut. 
Wilen also testified that he did not receive a bill for the tree
trimming. 

C.     Testimony by TLS Landscaping Employees








Story, a crew leader for TLS Landscaping,
testified that on the date in question, he was instructed to go to Wilen=s house
and to perform whatever work Wilen requested. 
Story said that he and Eugenio went to Wilen=s house,
and he asked Wilen what needed to be done. 
In response, Wilen took Story to the upstairs balcony, pointed out a
tree on Falkenstein=s property that was blocking the
view of the clubhouse, and told Story to cut it.  Story said that he told Wilen that it was not
proper to Atop@ a tree
and explained to Wilen that it was not TLS Landscaping=s usual
practice to take Aa large lump sum off@ the
top.  Story testified that Wilen
responded, A[I]t=s okay,
just go ahead.@    The
group went into Wilen=s backyard, and Eugenio went
over the fence into Falkenstein=s yard
and climbed the tree.  Wilen stood in his
yard, moving his arms up and down to indicate to Eugenio the exact spot to cut
the tree. When Eugenio reached a certain point in the tree, Wilen indicated
that was the appropriate place to cut the tree, and Story told Eugenio to cut
the tree at that level.  Eugenio cut the
tree, threw the branches over the fence into Wilen=s yard,
and hauled them off.  Story said that
they cut about five feet off the top of the tree because Wilen instructed them
to do it.  Story further testified that
Wilen stood and watched as they cut the tree. 
Story said that he obviously knew the tree was not on Wilen=s
property but said that because they had worked for Wilen Afor so
long, I just assumed whatever he wanted was fine to do.@

D.     Testimony Regarding Tree Value








Richard Peters testified that he has been
employed by Fannin Tree Farm for twenty-seven years and that he had planted all
the major trees on Falkenstein=s
property.  Peters confirmed that the two
trees planted near Falkenstein=s pool
were matching trees.  He said that the
tree at issue was healthy prior to being Abutchered@ and
that it looked like a Atable top@
afterwards.  Peters testified that the
topped tree will never grow enough to catch up with its mate.  He said that although the health of the tree
has not necessarily been compromised, the tree=s
growing pattern has been altered so that it will never again match the shape of
its mate.  

Peters testified that the topped tree is not
marketable.  He said that the only way to
put Falkenstein back in the same position that he was in prior to the tree
being Abutchered@ would
be to replace the tree.  Peters submitted
a AReplacement
Proposal,@ showing that the replacement
cost of the tree is $4,151.39. 

E.     The Jury=s
Verdict

After hearing testimonyCincluding
testimony concerning Falkenstein=s
attorney=s feesCand
reviewing the evidence, the jury found that Wilen had trespassed, assessed
actual damages of $5,300.00, found that the harm to Falkenstein resulted from
Wilen=s
malice, assessed exemplary damages of $18,000.00, and found that reasonable and
necessary attorney=s fees for Falkenstein were
$29,700.00.  This appeal followed.

III.  Sufficiency of the Evidence

A.     Sufficiency Standards of Review

1.     Legal Sufficiency








A legal sufficiency challenge may only be sustained
when:  (1) the record discloses a
complete absence of evidence of a vital fact; (2) the court is barred by rules
of law or of evidence from giving weight to the only evidence offered to prove
a vital fact; (3) the evidence offered to prove a vital fact is no more than a
mere scintilla; or (4) the evidence establishes conclusively the opposite of a
vital fact.  Uniroyal Goodrich Tire
Co. v. Martinez, 977 S.W.2d 328, 334 (Tex. 1998), cert. denied, 526
U.S. 1040 (1999); Robert W. Calvert, "No Evidence"
and "Insufficient Evidence" Points of Error, 38 TEX. L. REV. 361,
362-63 (1960).  In determining whether there
is legally sufficient evidence to support the finding under review, we must
consider evidence favorable to the finding if a reasonable fact-finder could,
and disregard evidence contrary to the finding unless a reasonable fact-finder
could not.  City of Keller v. Wilson,
168 S.W.3d 802, 827 (Tex. 2005). 








Anything more than a scintilla of evidence is legally
sufficient to support the finding.  Cont=l Coffee Prods.
Co. v. Cazarez, 937 S.W.2d 444, 450 (Tex. 1996); Leitch v. Hornsby,
935 S.W.2d 114, 118 (Tex. 1996).  When
the evidence offered to prove a vital fact is so weak as to do no more than
create a mere surmise or suspicion of its existence, the evidence is no more
than a scintilla and, in legal effect, is no evidence.  Kindred v. Con/Chem, Inc., 650 S.W.2d
61, 63 (Tex. 1983).  More than a scintilla
of evidence exists if the evidence furnishes some reasonable basis for
differing conclusions by reasonable minds about the existence of a vital
fact.  Rocor Int=l, Inc. v. Nat=l Union Fire Ins.
Co.,
77 S.W.3d 253, 262 (Tex. 2002).

2.     Factual Sufficiency

An assertion that the evidence is factually
insufficient to support a fact finding means that the evidence supporting the
finding is so weak or the evidence to the contrary is so overwhelming that the
answer should be set aside and a new trial ordered.  Garza v. Alviar, 395 S.W.2d 821, 823
(Tex. 1965).  We are required to consider
all of the evidence in the case in making this determination, not just the
evidence that supports the finding.  Mar.
Overseas Corp. v. Ellis, 971 S.W.2d 402, 406-07 (Tex.), cert. denied,
525 U.S. 1017 (1998).

3.     Sufficiency
of the Evidence to Support Finding Based on Clear and Convincing Evidence

 








When a jury makes an affirmative finding of
malice that is required to be based on clear and convincing evidence, in
conducting a legal sufficiency review we review all the evidence in the light
most favorable to the jury=s
finding, taking into account contrary undisputed facts, to determine whether
reasonable jurors could have formed a firm belief or conviction regarding
malice.  Qwest Int=l Commc=ns, Inc.
v. AT & T Corp., 167 S.W.3d 324, 326 (Tex. 2005); see also In
re J.F.C., 96 S.W.3d 256, 264‑68 (Tex. 2002) (discussing legal and
factual sufficiency reviews in termination of parental rights appeal).  When reviewing the factual sufficiency of the
evidence to support a finding required to be based on clear and convincing
evidence, we must give due consideration to any evidence the fact-finder could
reasonably have found to be clear and convincing.  J.F.C., 96 S.W.3d at 266-67.  We must consider the disputed evidence and
determine whether a reasonable fact-finder could have resolved that evidence in
favor of the finding.  Id.  The evidence is factually insufficient if, in
light of the entire record, the disputed evidence that a reasonable fact-finder
could not have credited in favor of its finding is so significant that a
fact-finder could not have reasonably formed a firm conviction or belief.  Id. (citing In re C.H., 89
S.W.3d 17, 25 (Tex. 2002)).  Both legal
and factual sufficiency reviews of a finding required to be based on clear and
convincing evidence must take into consideration whether the evidence is such
that a fact-finder could reasonably form a firm belief or conviction about the
truth of the matter required to be established by clear and convincing
evidence.  J.F.C., 96 S.W.3d at
265‑66; C.H., 89 S.W.3d at 25.

B.     Trespass








In his first issue, Wilen argues that Falkenstein
failed to introduce legally and factually sufficient evidence to prove all the
elements necessary to establish a trespass to real property.  Trespass to real property occurs when a
person enters another=s land without consent.  See Gen. Mills Rests., Inc. v. Tex. Wings,
Inc., 12 S.W.3d 827, 833 (Tex. App.CDallas
2000, no pet.).  To recover damages for
trespass to real property, a plaintiff must prove that (1) the plaintiff owns
or has a lawful right to possess real property, (2) the defendant entered the
plaintiff=s land and the entry was
physical, intentional, and voluntary, and (3) the defendant=s
trespass caused injury to the plaintiff. 
See generally Stone Res., Inc. v. Barnett, 661 S.W.2d 148, 151 (Tex.
App.CHouston
[1st Dist.] 1983, no writ).  Concerning
the intent element of the tort, trespass requires only proof of interference
with the right of possession of real property; the only relevant intent is that
of the actor to enter the property.  Accord
Trinity Universal Ins. Co. v. Cowan, 945 S.W.2d 819, 827 (Tex. 1997).  The actor=s
subjective intent or awareness of the property=s
ownership is irrelevant.  Id.; see,
e.g., McDaniel Bros. v. Wilson, 70 S.W.2d 618, 621 (Tex. Civ. App.CBeaumont
1934, writ ref=d) (holding that Aevery
unauthorized entry upon land of another is a trespass@ even if
no damage is done and Athe intent or motive prompting
the trespass is immaterial@).

A person likewise trespasses when he
intentionally causes a third person to enter land in the possession of
another.  Restatement (Second) of Torts ' 158
cmt. j (1977).  The Restatement (Second)
of Torts explains agency liability in a trespass suit as follows:








Causing entry of a third
person.  If, by any act of his, the actor
intentionally causes a third person to enter land, he is fully liable as though
he himself enters.  Thus, if the actor
has commanded or requested a third person to enter land in the possession of
another, the actor is responsible for the third person=s entry, if it be a
trespass.  This is an application of the
general principle that one who intentionally causes another to do an act is
under the same liability as though he himself does the act in question.

 

Id.; Watson v. Brazos Elec. Power Coop., 918
S.W.2d 639, 645 (Tex. App.CWaco
1996, writ denied); see Houston Lighting & Power Co. v. Sue, 644
S.W.2d 835, 842 (Tex. App.CCorpus
Christi 1982, writ ref'd n.r.e.); Pargas of Longview, Inc. v. Jones, 573
S.W.2d 571, 574 (Tex. Civ. App.CTexarkana
1978, no writ) (holding principal liable for trespass it directed agent to
commit). 

Here, the evidence demonstrates that TLS
Landscaping=s employees entered Falkenstein=s
property at Wilen=s direction and request.  Story testified that he did not know what
work was to be performed when he was sent to Wilen=s house;
Wilen instructed him to trim a specific tree on Falkenstein=s
property.  Both Wilen and Story testified
that Wilen pointed out the tree to be cut, and the evidence established that
both Wilen and Story knew that the tree was not on Wilen=s
property.  No one testified that Story
had permission to be on Falkenstein=s
property.








Wilen claims on appeal that Falkenstein failed to
prove ownership of his yard.  Throughout
the trial, however, the parties referred to Falkenstein=s house,
Falkenstein=s property, and the trees on
Falkenstein=s property all as being owned by
Falkenstein.  No evidence exists that
Falkenstein did not own the yard on which his house and the tree at issue were
situated.  In fact, at trial, the issue
of Falkenstein=s ownership of his yard was not
contested.

Viewing the evidence under the appropriate
standards of review, Falkenstein proved by legally and factually sufficient
evidence each element of trespass when he proved that Wilen directed a tree
trimming service to enter his (Falkenstein=s)
property and to trim a tree, all without his knowledge or consent and while he
was on vacation.  See Sue, 644
S.W.2d at 842 (holding trial court did not err by entering judgment against
HL&P on the basis of trespass because it was undisputed that Ebasco was on
the land at the request of HL&P).  We
overrule Wilen=s first issue.

C.     Damages

1.     Actual Damages








In his second issue, Wilen initially argues that
the evidence is factually insufficient to support the actual damages
award.  Specifically, he contends that no
evidence exists of diminution in the value of the land as a result of the alleged
trespass and that there was no actual damage to the tree, which is still
healthy and growing.  Courts have gone to
great lengths to hold trespassers liable for the consequences of their
acts.  Rochelle v. Carr, 418
S.W.2d 710, 712 (Tex. Civ. App.CSan Antonio
1967, no writ).  In the cases of
trespassory damage to trees, the measure of damages is the diminution in the
value of the land or, under some circumstances, the value of the trees
destroyed or removed.  Id. at 711
(citing Cummer-Graham Co. v. Maddox, 155 Tex. 284, 291, 285 S.W.2d 932,
936 (1956)).  If a defendant=s
cutting down of shade or ornamental trees does not reduce the market value of
the property, courts are authorized to award damages for the intrinsic value of
the trees.  Porras v. Craig, 675
S.W.2d 503, 506 (Tex. 1984).

The parties here agree that no difference exists
in the fair market value of Falkenstein=s
property before and after the tree trimming. 
We therefore analyze the record for evidence of the intrinsic value of
the tree.  See id. at 506.  








Falkenstein testified that he had the two
matching trees planted on either side of his swimming pool Aso it
would look good for landscaping.@  The matching trees were the Afocal
point from his backyard from the inside of his house.@  Falkenstein=s
attorney introduced numerous photographs into evidence, showing the dramatic
difference between the two Amatching
trees@ after
the tree trimming.  In addition to
Falkenstein=s testimony describing the
ornamental or aesthetic purpose that the trees served, Peters, an employee of
Fannin Tree Farm, also testified that the trees were planted to be matching.
Peters=s AReplacement
Proposal@Cdated
November 25, 2002, which was a year and half prior to the trialCshowed
that the cost to replace the tree would be $4,151.39.  Moreover, Falkenstein testified that prior to
filing the lawsuit against Wilen, he asked Wilen for $5,000.00 to be used to
replace the tree and to purchase a guaranty.

After reviewing all of the evidence, we cannot
say that the evidence supporting the jury=s
$5,300.00 actual damages award is so weak or that the evidence to the contrary
is so overwhelming that the actual damages award should be set aside.  See Mar. Overseas Corp., 971 S.W.2d at
406-07; Garza, 395 S.W.2d at 823. 
Instead, it was within the jury=s
discretion to award actual damages in the amount of $5,300.00 based on the
intrinsic value of the cut tree.  See
Lamar County Elec. Coop. Ass=n v.
Bryant, 770 S.W.2d 921, 922-23 (Tex. App.CTexarkana
1989, no writ) (upholding jury=s
finding of intrinsic value and award of $2,500.00 in actual damages); Garey
Constr. Co. v. Thompson, 697 S.W.2d 865, 867 (Tex. App.CAustin
1985, no writ) (upholding $1,500.00 actual damage award for intrinsic value of
several shrubs and twelve-inch tree damaged by trespass); see also Lucas v.
Morrison, 286 S.W.2d 190, 191 (Tex. Civ. App.CSan
Antonio 1956, no writ) (upholding actual damages based on intrinsic value of
tree cut down by trespasser because tree provided shade for landowner=s milk
cows).  We overrule Wilen=s second
issue as it relates to the actual damages award.








2.     Exemplary Damages

a.      The Malice Finding

Also under his second issue, Wilen argues that
the evidence is factually insufficient to support the exemplary damages award
because his conduct was not malicious. 
Exemplary damages are recoverable for the tort of trespass if the
trespass was committed maliciously.  Williams
v. Garnett, 608 S.W.2d 794, 797 (Tex. Civ. App.CWaco
1980, no writ); Upham Gas Co. v. Smith, 247 S.W.2d 133, 135 (Tex. Civ.
App.CFort
Worth 1952, no writ); see also 1 J.
Hadley Edgar, Jr. & James B. Sales, Texas Torts and Remedies '
22.04[1][b] (2005); Cargal v. Cargal, 750 S.W.2d 382, 385 (Tex. App.CFort
Worth 1988, no writ) (recognizing that exemplary damages are recoverable for
malicious trespass); see also Green Tree Acceptance of Tex., Inc. v. McGrath,
No. 04-97-00226-CV, 1998 WL 337755, at *6 (Tex. App.CSan
Antonio June 24, 1998, no pet.) (not designated for publication).  The trespass must be initiated by or
accompanied with some evil intent or with complete disregard of anyone=s
rights.  Watson, 918 S.W.2d at
645; Mayflower Inv. Co. v. Stephens, 345 S.W.2d 786, 793 (Tex. Civ. App.CDallas
1960, writ ref=d n.r.e.).  Exemplary damages may not be awarded where it
appears that the defendant acted in good faith or without wrongful intention or
in the belief that he was exercising his rights.  Mayflower Inv. Co., 345 S.W.2d at 793.








Here, the trial court asked the jury whether it
found by clear and convincing evidence that the harm to Falkenstein resulted
from malice.  The charge defined malice
as including a Aspecific intent by John C. Wilen
to cause substantial injury to William Falkenstein,@ and the
jury answered yes to this question.








We note that the cases prescribing exemplary
damages for a Amalicious@ or Awillful@
trespass are based on the old, common law Aactual
malice@
definition requiring proof of Aill‑will,
spite, evil motive, or purposing the injuring of another.@  See, e.g., Clements v. Withers,
437 S.W.2d 818, 822 (Tex. 1969).  The
common law definition of malice was incorporated into the statutory definition
codified in the civil practice and remedies code.  See Act of April 6, 1995, 74th Leg.,
R.S., ch. 19, ' 1, 1995 Tex. Gen. Laws 108, 109
(providing two-part definition of Amalice@)
(amended 2003) (current version at Tex.
Civ. Prac. & Rem. Code Ann. '
41.001(7) (Vernon Supp. 2005); see also Joe McKay, Texas Public
Policy on Insuring Punitive Damages: Time for a Fresh Look, 2 Tex. Wesleyan Law Rev. 205, 210
(1995).  The statutory definition of
malice raised the standard of proof required to attain exemplary damages; the
statutory definition requires proof of the defendant=s
specific intent Ato cause substantial injury to
the claimant.@ 
See McKay, 2 Tex. Wesleyan
Law Rev. at 210.  Thus, proof of
the statutory standard of malice necessarily includes, and subsumes, proof of
common law Aactual malice.@  Accord id. 

Because clear and convincing evidence is required
to support the jury=s malice finding, we view all
the evidence in the light most favorable to the finding, taking into account
contrary undisputed facts, to determine whether reasonable jurors could have
formed a firm belief or conviction regarding malice.  Qwest Int=l Commc=ns, Inc., 167
S.W.3d at 326.  Thus, we focus our review
on whether there was clear and convincing evidence that Wilen=s
trespass through TLS Landscaping was performed with malice, that is, performed
with a specific intent to cause substantial injury to Falkenstein.













The evidence established that Wilen directed TLS
Landscaping to enter Falkenstein=s yard
and to trim five feet off the top of the view-blocking tree.  When Wilen told Story how he desired
Falkenstein=s tree to be trimmed, Story
testified that he explained that TLS Landscaping usually did not Atop@ a
tree.  Wilen reassured Story that it was Aokay@ and
directed Story to proceed.  Wilen=s
actions in ordering Falkenstein=s tree
to be trimmed while Falkenstein was on vacation reveal Wilen=s
disregard for Falkenstein=s right to maintain his property
in the way he saw fit.  The jury was free
to discredit Wilen=s protestations that no harm was
intended.  See Twyman v. Twyman,
855 S.W.2d 619, 623 (Tex. 1993) (stating that juries are free to discredit the
defendant=s protestations that no harm was
intended and to draw necessary inferences to establish intent).  Additionally, the jury could have discredited
Wilen=s
testimony that he assumed TLS Landscaping had permission to trim the tree as
not plausible because when Story arrived, he went to Wilen=s house,
not to Falkenstein=s.  And Story did not ask if Wilen knew which of Falkenstein=s trees
he was supposed to trim, as he would have done if he had obtained Falkenstein=s
permission to trim his trees.  Nor did
Story give any indication that Falkenstein had requested TLS Landscaping to
trim the view-blocking tree.  Instead,
Story reported to Wilen=s home to perform whatever work
Wilen requested, and when Wilen said that he wanted a tree trimmed, Story asked
which tree and how much.  Wilen pointed
out Falkenstein=s tree and indicated that five
feet should be cut off the top of the tree. 
This evidence is sufficient to permit the jury to find that the conduct
of Wilen, through his use of TLS Landscaping, constituted a specific intent to
cause substantial injury to Falkenstein.[1]  We hold that the jury=s
finding that the harm to Falkenstein resulted from Wilen=s
malicious trespass is supported by clear and convincing evidence.  See Act of April 6, 1995, 74th Leg.,
R.S., ch. 19, ' 1, 1995 Tex. Gen. Law 108, 110
(amended 2003) (current version at Tex.
Civ. Prac. & Rem. Code Ann. '
41.003(a)(2), (b) (Vernon Supp. 2005); see also Green Tree Acceptance of
Tex., Inc., 1998 WL 337755, at *6 (holding that clear and convincing
evidence existed to prove that Green Tree=s
trespass was committed with wanton, malicious, or evil intent).








Wilen
relies on Terrace Land Co. v. Am. Refuse, Inc., No. 01-00-00393-CV, 2002
WL 827438, at *11 (Tex. App.CHouston
[1st Dist.] Apr. 30, 2002, pet. denied) (not designated for publication), for
the proposition that his conduct does not support an award of exemplary
damages.  But in Terrace Land Co.,
A[t]he
record contain[ed] no evidence of ill‑will, spite, or a specific intent
on the part of defendants to cause substantial injury to Terrace.@  Id. 
Instead, in Terrace Land Co., the defendants were attempting to
repair a cinder block wall.  Id.  Here, the testimonyCthat
Wilen knew Falkenstein did not want Wilen=s tree
service to trim his tree, that Wilen knew Falkenstein was out of town on
vacation, and that Wilen knew Falkenstein wanted to take care of his own trees,
but nonetheless directed his tree service to enter Falkenstein=s
property and cut five feet off a tree that was obstructing Wilen=s viewCis
evidence of ill‑will, spite, and a specific intent on the part of Wilen
to cause substantial injury to Falkenstein. 
Thus, Terrace Land Co. is not controlling.           b.        Amount
of Exemplary Damages

Also in his second issue, Wilen argues that the
exemplary damages award is excessive.  We
review the alleged excessiveness of an exemplary damages award under state law
as a factual sufficiency challenge.  Mar.
Overseas Corp., 971 S.W.2d at 406; Citizens Nat=l Bank
v. Allen Rae Invs., Inc., 142 S.W.3d 459, 484, 491 n.52 (Tex. App.CFort
Worth 2004, no pet.) (op. on reh=g).  We may only reverse if the exemplary damages
award is so against the great weight and preponderance of the evidence as to be
manifestly unjust.  Transp. Ins. Co.
v. Moriel, 879 S.W.2d 10, 31 (Tex. 1994); Citizens Nat=l Bank, 142
S.W.3d at 484, 491 n.53.








We begin by noting that the jury=s award
of $18,000.00 in exemplary damages is less than $200,000.00 and is therefore
within the statutory exemplary damages cap. 
See Tex. Civ. Prac. &
Rem. Code Ann. ' 41.008(b) (Vernon Supp. 2005)
(capping exemplary damages at the greater of (1) two times the amount of
economic damages plus an amount equal to any noneconomic damages found by the
jury, not to exceed $750,000.00 or (2) $200,000.00).  Factors we consider in determining the
reasonableness of a capped award include (1) the nature of the wrong, (2) the
character of the conduct involved, (3) the degree of culpability of the
wrongdoer, (4) the situation and sensibilities of the parties concerned, (5)
the extent to which the conduct offends a public sense of justice and
impropriety, and (6) the net worth of the defendant.  Id. '
41.011(a) (Vernon 1997).  The amount of
exemplary damages rests largely in the discretion of the jury and should not be
disturbed unless the damages are so large as to indicate that they are the
result of passion, prejudice, or corruption. 
La. Pac. Corp. v. Smith, 553 S.W.2d 771, 777 (Tex. Civ. App.CTyler
1977, no writ).  








Here, evidence existed from which the jury could
have found that Wilen intentionally disregarded the wishes of his neighbor,
Falkenstein.  Falkenstein wanted to care
for his own trees.  Wilen wanted his
neighbor=s tree
to be trimmed back drastically because it blocked Wilen=s
balcony view of the clubhouse.  When
Falkenstein rebuffed Wilen=s offers
to pay to have the tree trimmed, Wilen took matters into his own hands.  He directed TLS Landscaping to enter
Falkenstein=s property and to trim five feet
off the top of the tree while his neighbor was vacationing.  Despite Story=s
warning that Atopping@ the
tree was inappropriate and abnormal, Wilen proceeded, disregarding Falkenstein=s
superior property rights and Story=s
warning and subjecting his neighbor=s
property to his own wishes.  Evidence
further revealed that Wilen had a net worth of over $496,000.00, not including
his home and the other assets he owned jointly with his wife.  The character of Wilen=s conduct,
his degree of culpability, the situation and sensibility of the parties
involved, and a public sense of justice, as well as Wilen=s
significant net worth, support the award of $18,000.00 in exemplary
damages.  We overrule the remainder of
Wilen=s second
issue.

IV.  Charge Error

A.     Definition of Trespass

In his fourth issue, Wilen contends that the
trial court erred by denying his request to include the word Aknowingly@ in the
charge=s
definition of Atrespass.@  When a
party complains about the trial court's refusal to submit a requested
instruction or definition, the question on review is whether the requested
charge was reasonably necessary to enable the jury to render a proper
verdict.  See Tex. R. Civ. P. 277; Tex. Workers'
Comp. Ins. Fund v. Mandlbauer, 34 S.W.3d 909, 912 (Tex. 2000); Vinson
& Elkins v. Moran, 946 S.W.2d 381, 405 (Tex. App.CHouston [14th
Dist.] 1997, writ dism'd by agr.).     The
court=s charge
on trespass stated,

Did John C. Wilen
trespass on William Falkenstein=s property?

 








ATrespass@ means to enter on the
property of another without having consent of the owner.  Entry upon another=s property need not be in
person but may be made by causing or permitting a thing or another person to
cross the boundary of the premises.  Any
person who [aids], assists, advises, or encourages the commission of the
trespass is liable as a trespasser.

 

Answer AYes@ or ANo@

 








Citing a federal decision from the Second Circuit, Wilen argues that
this definition should have included Aknowingly@ before
the phrase A[aids], assists, advises, or
encourages.@ 
See Pittman v. Grayson, 149 F.3d 111, 123 (2d Cir. 1998), cert.
denied, 528 U.S. 818 (1999).  But Pittman
is not binding authority on this court, and it is factually distinguishable
from the present facts on many grounds.  Pittman
involved a father=s suit against Icelandair for
permitting a mother to fly their child to Iceland when the father was the child=s
managing conservator.  In holding the
airline not liable, the court stated, AIn order
to be liable for acting in concert with the primary tortfeasor under either
theory, the defendant must know the wrongful nature of the primary actor's
conduct.@  Id. 
Wilen interprets this sentence as requiring the definition of trespass
in this case to instruct the jury that he must know of the wrongful
nature of TLS Landscaping=s conduct.  That is, that he must have knowingly
aided, assisted, advised, or encouraged the commission of  TLS Landscaping=s trespass.  Here, however, WilenCnot TLS
LandscapingCis the primary tortfeasor.  And Wilen knew of the wrongful nature of his
own conduct when he directed the tree trimming service to access Falkenstein=s
property and to trim a tree on Falkenstein=s
property.[2]  Thus, Pittman supports the proposition
that to hold TLS Landscaping liable for the trespass, it must have known of the
wrongful nature of Wilen=s conduct, not vice versa.  Pittman is not applicable. 

We have located no Texas case, and Wilen has
cited none, that requires the agency definition of trespass provided by the
trial court to include the word Aknowingly.@  The case law appears to the contrary.  See generally Watson, 918 S.W.2d at
646 (holding trial court erred by refusing to submit trespass definition
consisting of Aentry upon another=s
property need not be in person but may be made by causing or permitting a
thing to cross the boundary of the premises. 
Every unauthorized entry upon land of another is a trespass and the
intent or motive prompting the trespass is immaterial.@)
(emphasis added); Nixon v. Sipes, 667 S.W.2d 223, 224 (Tex. App.CTexarkana
1984, writ ref=d n.r.e.) (focusing on intent to
enter as relevant intent); Frick v. Int=l &
G.N. Ry. Co., 207 S.W. 198, 199-200 (Tex. Civ. App.CSan
Antonio 1918, writ ref=d) (same).








The trial court=s
definition of Atrespass@ is
correct because it is consistent with case law holding that the only relevant
intent is that of the actor to enter the property or to aid, assist, advise, or
encourage another to enter the property; it assisted the jury, accurately
stated the law, and is supported by the pleadings and evidence.  See Cowan, 945 S.W.2d at 827.  And
finally, Wilen points to no evidence that his aid to, assistance to,
advisement of, or encouragement of TLS Landscaping in entering Falkenstein=s
property to trim the view-blocking tree was not knowing.  Although Wilen testified that he Aassumed@ that
TLS Landscaping had permission to enter Falkenstein=s
property, Wilen offered no evidence of Falkenstein=s
consent, of a mistake or misunderstanding between the two, or that he
unknowingly aided, assisted, advised, or encouraged the commission of the
trespass.  Thus, Wilen=s
request that the trial court insert the word Aknowingly@ into
the definition of Atrespass@ is not
supported by the evidence, and the proposed
insertion was not reasonably necessary to enable the jury to render a proper
verdict.  We hold that the trial
court did not abuse its discretion by overruling Wilen=s
objection to the definition of Atrespass@ in the
jury charge.  See Nixon, 667
S.W.2d at 224 (stating that form of definitions rests within sound discretion
of trial court and holding that trial court did not err by submitting a correct
definition of trespasser).  We overrule
Wilen=s fourth
issue.

 

B.     Question Regarding Amount of Exemplary
Damages








In his sixth issue, Wilen claims that the trial
court erred by listing attorney=s fees
as one of the items that the jury could consider in determining the amount of
any exemplary damage award.  But in the
trial court, Wilen did not object on this basis to Question 4, the question
asking the jury what amount, if any, of exemplary damages should be awarded to
Falkenstein and listing the factors the jury could consider.  Accordingly, this complaint is not preserved
for our review.  See Tex. R. Civ. P. 274; Tex. R. App. P. 33.1; Bushell v. Dean, 803 S.W.2d 711,
712 (Tex. 1991) (op. on reh=g); State
Farm Fire & Cas. Co. v. Gros, 818 S.W.2d 908, 916 (Tex. App.CAustin
1991, no writ).  We overrule Wilen=s sixth
issue.   

C.     Attorney=s Fees
Question

In his third, seventh, and eighth issues, Wilen
argues that the trial court erred by overruling his objections to jury charge
questions on attorney=s fees and by entering judgment
on the jury=s determination of attorney=s fees
because attorney=s fees are not recoverable in
this case.  Falkenstein contends that he
is entitled to attorney=s fees based on equity because
the evidence supports a finding that Wilen acted in bad faith and because he
pleaded for recovery of attorney=s fees Abased
upon equitable principles.@  








To recover attorney=s fees,
a party must prove entitlement by contract or statute.  Holland v. Wal-Mart Stores, Inc., 1
S.W.3d 91, 95 (Tex. 1999).  Generally,
attorney=s fees
are not recoverable in an action for tort. 
See New Amsterdam Cas. Co. v. Tex. Indus., Inc., 414
S.W.2d 914, 915 (Tex. 1967); see also Tex.
Civ. Prac. & Rem. Code Ann. '
38.001(8) (Vernon 1997).  Falkenstein
relies upon an Austin Court of Appeals= case
recognizing two exceptions to the general rule that attorney=s fees
cannot be recovered as damages.  Qwest
Commc=ns Int=l, Inc.
v. A T & T Corp., 114 S.W.3d 15, 32-33 (Tex. App.CAustin
2003), rev=d in part on other grounds, 167
S.W.3d 324 (Tex. 2005).  The first
exception applies Awhere the defendant=s tort
requires the plaintiff to act in the protection of his interests by bringing or
defending an action against a third party,@ and in
that case, Athe plaintiff >is
entitled to recover compensation for the reasonably necessary loss of time,
attorney fees[,] and other expenditures thereby suffered or incurred.=@  Id. at 33 (quoting McCall v. Tana
Oil & Gas Corp., 82 S.W.3d 337, 344 (Tex. App.CAustin
2001), rev=d on other grounds, 104
S.W.3d 80 (Tex. 2003)).  The second
exception Apermits recovery of damages
measured by attorney=s fees when the defendant >has
acted in bad faith, vexatiously, wantonly, or for oppressive reasons.=@  Id. (quoting McCall, 82 S.W.3d at
345).  The supreme court, however,
reversed this holding in McCall, concluding that recovery of attorney=s fees
for these reasons should be pursued under rule of civil procedure 13, not as
actual damages.  See Tana Oil &
Gas Corp., 104 S.W.3d at 83.








Falkenstein=s action
was not founded on the interpretation of a contract, and attorney=s fees
were not authorized by statute.  See
Pargas of Longview, Inc. v. Jones, 573 S.W.2d 571, 574 (Tex. Civ. App.CTexarkana
1978, no writ) (holding award of attorney=s fees
is not authorized in suits for trespass). 
Likewise, the first exception recognized in the Qwest case and
relied upon by Falkenstein does not apply because Falkenstein did not sue a
third party.  And as we noted, the second
exception recognized by the Qwest court was overruled by the supreme
court.  Tana Oil & Gas Corp.,
104 S.W.3d at 83.      Because Falkenstein
did not seek recovery of his attorney=s fees
as a sanction and because attorney=s fees
are not authorized by statute or contract in this case, we hold that the trial
court erred by submitting questions to the jury regarding attorney=s fees
and by entering judgment on the jury=s
finding awarding Falkenstein attorney=s fees
of $29,700.00.  We sustain Wilen=s third,
seventh, and eighth issues.

D.     Malice Question

Because we have held that sufficient evidence
exists to support the jury=s
finding of malice, we overrule Wilen=s fifth
issue contending that the trial court erred by overruling Wilen=s
no-evidence objections to the malice jury question.

 

 








 

V.  Conclusion

Having sustained Wilen=s third,
seventh, and eighth issues, we modify 
the judgment by deleting the award of attorney=s fees
to Falkenstein.  See Tex. R. App. P. 43.2(b); Amerman v.
Martin, 83 S.W.3d 858, 864 (Tex. App.CTexarkana
2002), aff=d, 133
S.W.3d 262 (Tex. 2004).  As modified, we
affirm the trial court=s judgment.

 

SUE
WALKER

JUSTICE

 

PANEL B:   DAUPHINOT, WALKER, and MCCOY, JJ.

 

DELIVERED: April 6, 2006











[1]We note that typically a Amalice@ finding has not been
based on a fact-finder=s determination that the
defendant possessed the specific intent to cause substantial injury to the
plaintiff but instead on the determination that the defendant committed Aan act or omission:  (i) which when viewed objectively from the
standpoint of the actor at the time of its occurrence involve[d] an extreme
degree of risk, considering the probability and magnitude of the potential harm
to others; and (ii) of which the actor ha[d] actual, subjective awareness of
the risk involved, but nevertheless proceed[ed] with conscious indifference to
the rights, safety, or welfare of others.@  See
Act of April 6, 1995, 74th Leg., R.S., ch. 19, ' 1, 1995 Tex. Gen. Laws
108, 109 (providing two-part definition of Amalice@) (amended 2003) (current version at Tex. Civ. Prac. & Rem. Code Ann. ' 41.001(11) (Vernon Supp.
2005).  This distinction is significant
because Asubstantial injury@ is a lower standard than
Aextreme degree of risk.@  That is, when a defendant acts with a
specific intent to cause substantial injury to the plaintiff, the injury
actually caused need not be as great to support exemplary damages as an injury
occurring when the defendant did not specifically intend to cause injury.





[2]Recall that Wilen
admitted that he told TLS Landscaping which tree to trim and how much to trim.