**Tony HAUGLUM and Patricia Hauglum, Appellants,**

**v.**

**Lee A. DURST, Jr., Durst Oil Company, Barbara A. Durst, & Durst Exploration Company, Appellees.**

**No. 13–88–065–CV.**

Court of Appeals of Texas, Corpus Christi.

March 30, 1989.

William Robert Anderson, III, Michael E. Tomlin, Sorrell, Anderson & Lehrman, Corpus Christi, for appellants.

David A. Sibley, M.W. Meredith, Jr., Meredith, Donnell & Abernethy, Richard B. Stone, Stone & Mays, Corpus Christi, for appellees.

Before UTTER, KENNEDY and BENAVIDES, JJ.

## OPINION

UTTER, Justice.

Appellants Tony Hauglum, doing business as South Texas Oil & Gas Consulting, and Patricia Hauglum brought suit against appellees Lee A. Durst, Jr., Barbara A. Durst, and their respective companies, Durst Oil Company and Durst Exploration Company, for the breach of a fiduciary duty arising from a written contract. Appellants sought an award of damages and the placement of a constructive trust against various property interests allegedly being wrongfully withheld from them. Appellees Lee A. Durst and Durst Oil Company counterclaimed, alleging assault and false imprisonment, breach of contract, and interference with contractual rights. These appellees further sought to remove cloud on title and requested actual and exemplary damages on the various claims. Appellees Barbara Durst and Durst Exploration Company counterclaimed to quiet title and sought actual and exemplary damages for "cloud on title."

After appellants rested their case, the trial court granted appellees Barbara Durst's and Durst Exploration Company's motion for instructed verdict against appellants. The remaining causes were submitted to the jury. Based on jury findings that appellees Lee Durst and Durst Oil Company did not breach any "confidential duty" owed to appellant Tony Hauglum by acquiring interests in various prospective wells, the trial court ordered that appellants take nothing by their causes against appellees Lee Durst and Durst Oil Company. Appellee Lee Durst recovered the following from appellant Tony Hauglum on his counterclaims: $5,000.00 in damages for cloud on title, $3,000.00 in compensatory damages for breach of contract, and $53,035.48 in attorney's fees arising out of and caused by appellant Tony Hauglum's breach of contract. Appellees Barbara A. Durst and Durst Exploration Company recovered $35,400.00 in actual and exemplary damages from appellant Tony Hauglum on their counterclaim for cloud on title. We affirm in part and reverse and render in part.

The record reflects the following facts. On January 23, 1982, Hauglum signed a letter agreement in which he agreed to render geological and geophysical services to Lee Durst. Basically, under the letter agreement, Hauglum evaluated and recommended oil and gas prospects designated by Lee Durst and in exchange, received a monthly retainer of $250.00. Hauglum also received additional money and interests in those oil and gas prospects which were sold to another operator or promoted to a group of investors by Durst. The agreement allowed Hauglum and Lee Durst to agree and define an "area of mutual interest" in the immediate vicinity of evaluated land recommended as an oil and gas prospect. If Hauglum and Lee Durst so defined and agreed to an "area of mutual interest," the agreement provided that Hauglum would receive an interest in any oil and gas leases acquired by Lee Durst within the "area of mutual interest." However, no "area of mutual interest" was ever defined or agreed to.

After the above agreement went into effect, Hauglum became unhappy with the

amount of his compensation. Hauglum orally requested to amend their agreement and later submitted an amended letter agreement dated August 18, 1982. Durst refused to change the original agreement. Later, Hauglum picked up Durst, drove out to a deserted country road, and threatened to sue Durst, his sister, his father, his investors and everyone with whom he worked with. Durst further stated that Hauglum said that he (Hauglum) was mad enough to smash Durst's face in, but did not do so. He then drove Durst back to town but told him he had better have an amended agreement on his desk by noon the next day. A few days later, Durst wrote Hauglum a letter terminating any relationship they had together.

Hauglum subsequently brought suit against Lee Durst, Barbara Durst and their respective companies. Hauglum sought to receive an interest in various wells in the Bryan–Woodbine field based on the fact that Lee Durst had received an interest in oil and gas prospects in that field from his sister, Barbara Durst. Hauglum alleged that appellees failure to convey an interest to him as required by the letter agreement constituted an abuse of fiduciary duty based on the working relationship between Durst and Hauglum, and that Barbara Durst had, by her actions, assumed this agreement.

By their seventeenth and eighteenth points of error, appellants contend the trial court erred in failing to award judgment to Hauglum for his 1.125% interest in the Perkins Yeager, Smyth No. 1, Cheapside No. 1, Bowie, Cotton Compress, Oak Grove, Lopez, Polly Ranch No. 2, Phillips No. 1, Austin High School, Harper Westside, and Becker–Duncan Wells. Appellants argue that the overwhelming weight and preponderance of the evidence shows that appellants were entitled to said award as a matter of law.

A point in a motion for new trial is a prerequisite to a complaint on appeal that the jury finding is against the overwhelming weight and preponderance of the evidence. *Friedman v. Houston Sports Assoc.*, 731 S.W.2d 572, 575 (Tex.App.—Hous-ton [1st Dist.] 1987, writ ref'd n.r.e.); Tex. R.Civ.P. 324(b)(3). Appellants failed to properly raise the above points in the trial court and may not do so for the first time on appeal. Moreover, we have carefully reviewed the record and hold that the judgment was not contrary to the overwhelming weight and preponderance of the evidence. We overrule appellants' seventeenth and eighteenth points of error.

By their nineteenth point of error, appellants complain that the trial court erred in granting Durst's motion for instructed verdict because there was sufficient evidence to show Hauglum was entitled to at least a 1.125% interest in all the Bryan–Woodbine unit wells owned by Barbara Durst.

In reviewing an instructed verdict, the appellate court must determine whether there is any evidence of probative force to raise fact issues on the material questions presented. *Conaway v. Roberts*, 725 S.W.2d 377, 379 (Tex.App.—Corpus Christi 1987, writ denied); *Sullivan v. Methodist Hospitals*, 699 S.W.2d 265, 274 (Tex.App.— Corpus Christi 1985), *writ ref'd n.r.e. per curiam*, 714 S.W.2d 302 (Tex.1986). All of the evidence must be considered in the light most favorable to the party against whom the instructed verdict was granted, and all contrary evidence and inferences must be disregarded. *C.S.R., Inc. v. Industrial Mechanical, Inc.*, 698 S.W.2d 213, 217 (Tex.App.—Corpus Christi 1985, writ ref'd n.r.e.); *Blaeser Development Corp. v. Aldridge*, 664 S.W.2d 830, 831 (Tex.App.—Corpus Christi 1984, no writ).

Hauglum entered into a letter agreement with Durst in which Hauglum was to provide geological and geophysical consulting services to Durst. Neither Barbara Durst nor her corporation, the Durst Exploration Company, were a party to that agreement. Durst subsequently acquired two leases based on Hauglum's recommendations, both of which were located in what is now called the Bryan–Woodbine unit. Barbara Durst, whose interest in the Bryan area began in the summer of 1981, was instrumental in obtaining one of these leases, the Con-Tatum, from Sanchez O'Brien. She had an employee who had worked for

O'Brien at one time, and she offered to send that employee over to talk with O'Brien about a possible farmout. After her employee spoke with O'Brien, Lee Durst acquired that lease and sold it and one other, the Otis Brown, to Lyons Petroleum for $49,600.00 in May of 1982. Hauglum received a twenty-five percent interest, and Lee and Barbara Durst split the remainder. No operating or managing agreement between Lee and Barbara Durst existed in the Lyons Petroleum transaction. Rather, the only service she provided was an employee contact. Further, she was not a party to the above splits but merely received a check and statement of expenses after she went to Bryan.

Lee Durst thereafter consulted with Hauglum on further prospects in the Bryan–Woodbine field, including the Perkins–Yeager and Becker–Duncan units around May or June of 1982. It was disputed whether Hauglum was consulted regarding other units in that field.

Barbara Durst was also acquiring leases in that field after May of 1982. However, she was consulting her own geologist. All of the leases she acquired in that field were put in the name of her corporation, the Durst Exploration Company. After she began acquiring leases, however, the individual working interest owners, including herself, entered into a management agreement with Lee Durst's company, the Durst Oil Company, concerning the leases they were acquiring. Specifically, the Durst Oil Company was to receive and disburse distributions and receive joint interest billings from the individual operators and bill them out to the working interest owners. Each of the investors signed the management agreements with the Durst Oil Company. Lee Durst informed Barbara Durst that he might incur an in-house obligation for which he might need a 1.125 percent overriding royalty interest, but he did not specify who it was for or what their profession was. Further, it is undisputed that Hauglum and Barbara Durst had no direct business dealings together and that she never personally promised or agreed that Hauglum was to receive any type of mineral interest in her Bryan area acquisitions, nor

personally promised to pay him any type of commission for geological services which he might render in the Bryan area. No such services were received by Barbara Durst. In fact, the only communication she had with Hauglum prior to her deposition was a lunch appointment in the summer of 1981 which had nothing to do with the Bryan lease acquisitions. After litigation had apparently commenced, Barbara Durst assigned a 1.125 percent overriding royalty interest in all of her interest in the Bryan area to Lee Durst. She testified that these assignments were made on advice of counsel for settlement purposes. At the time of trial they had not been reassigned to her.

Hauglum testified that Lee Durst discussed with him a desire to continue to acquire leases in the Bryan area and told him that "he was going to have Barbara go in there and start picking up the leases where he told her to lease." Hauglum further testified that he continued to prepare maps in that area, but that Lee Durst never told him that his interest was going to be limited to a 1.125 percent overriding royalty because of the agreement Lee Durst had with Barbara Durst.

Lee Durst testified that all monies he paid to Hauglum came from him individually. He further testified that the services Hauglum was furnishing under the letter agreement were for him personally, and not for Barbara Durst's use in acquiring Bryan area leases. Lastly, Barbara Durst never authorized him to commit her individual Bryan area interests to the terms of the letter agreement he had with Hauglum.

▆ After carefully reviewing the record, we find no evidence that Hauglum was entitled to an assignment of at least 1.125 percent interest in Barbara Durst's interest in the Bryan–Woodbine field. Therefore, the trial court properly granted Barbara Durst's motion for instructed verdict. We overrule appellants' nineteenth point of error.

By points of error eleven through sixteen, appellants challenge the sufficiency of the evidence regarding breach of con-

tract and damages. Point eleven contends that the trial court erred in submitting such special issues because there was no breach of contract as a matter of law. Points twelve through fifteen assert that the trial court erred in awarding judgment based on those special issues because there was no evidence and insufficient evidence to show a breach of contract and damages resulting from the alleged breach of contract. Point sixteen contends that the trial court erred in failing to grant Hauglum's motion for instructed verdict because there was no evidence to support the submission of those special issues to the jury.

It is well established that when one party to an agreement has repudiated it, the other party may then accept the agreement as being terminated or consider the repudiation as a breach of contract and bring suit for damages. *Universal Life & Accident Insurance Co. v. Sanders*, 129 Tex. 344, 102 S.W.2d 405, 406 (1937); *Pollack v. Pollack*, 39 S.W.2d 853, 857 (Tex.Comm'n App. 1931, holding approved); *Lufkin Nursing Home, Inc. v. Colonial Investment Corp.*, 491 S.W.2d 459, 463 (Tex.Civ.App.—Amarillo 1973, no writ). An anticipatory breach occurs when a party absolutely repudiates the obligation, without just excuse, and the other party is damaged by the repudiation. *Valdina Farms, Inc. v. Brown, Beasley & Assoc.*, 733 S.W.2d 688, 692 (Tex.App.—San Antonio 1987, no writ); *Taylor Publishing Co. v. Systems Marketing, Inc.*, 686 S.W. 2d 213, 217 (Tex.App.—Dallas 1984, writ ref'd n.r.e.). However, such an anticipatory repudiation of a contract may consist of either words or actions by a party to a contract that indicates an intention that he is not going to perform the contract according to its terms in the future. *Builder's Sand, Inc. v. Turtur*, 678 S.W.2d 115, 120 (Tex.App.—Houston [14th Dist.] 1984, no writ); *Baytown State Bank v. Don Miller Leasing Co.*, 551 S.W.2d 771, 774 (Tex.Civ. App.—Houston [14th Dist.] 1977, writ ref'd n.r.e.). Specifically, it is conduct which evidences a fixed intention to abandon, renounce and refuse to perform the contract. *Moore v. Jenkins*, 109 Tex. 461, 211 S.W. 975, 976 (1919); *Group Life & Health In-*

*surance Co. v. Turner*, 620 S.W.2d 670, 673 (Tex.Civ.App.—Dallas 1981, no writ).

■ We hold that the evidence presented in this case shows a definite manifestation that Hauglum would no longer perform under the terms of the original contract. Durst's repeated rejections of the proposed modifications and the subsequent "trip to the country" where various threats were made should the modifications not be accepted, constitutes clear and unequivocal evidence of that fact. Thus, Durst had reason to terminate their agreement by accepting the anticipatory breach and to bring a suit for damages.

■ In an action for breach of contract, actual damages may be recovered when the loss is the natural, probable, and foreseeable consequence of defendant's conduct. *Mead v. Johnson Group, Inc.*, 615 S.W.2d 685, 687 (Tex.1981); *La Chance v. Hollenbeck*, 695 S.W.2d 618, 621 (Tex.App.—Austin 1985, writ ref'd n.r.e.). However, mere proof of the making and breach of a contract fully prove a plaintiff's cause of action for which he is entitled to recover at least nominal damages, regardless of whether actual damages are proved. *Houston Pipe Line Co. v. Oxy Petroleum, Inc.*, 597 S.W.2d 57, 59 (Tex.Civ.App.—Corpus Christi 1980, writ dism'd); *Huntington Corp. v. Inwood Construction Co.*, 472 S.W.2d 804, 807–808 (Tex.Civ.App.—Dallas 1971, writ ref'd n.r.e.); *Atomic Fuel Extraction Corp. v. Estate of Slick*, 386 S.W. 2d 180, 190 (Tex.Civ.App.—San Antonio 1964), *writ ref'd n.r.e.*, 403 S.W.2d 784 (Tex.1965). We hold that the evidence sufficiently establishes the making and breach of the letter agreement and that Durst was entitled to $3,000.00 as nominal damages. We overrule appellants' eleventh through sixteenth points of error.

By points of error eight through ten, appellants contend the trial court erred in awarding attorneys' fees incurred by Durst. Points eight and nine argue that there is no evidence and insufficient evidence as to how the $53,035.48 in attorneys' fees were incurred. Specifically, appellant complains that Durst should not recover attorney fees because the stipu-

lated evidence failed to differentiate the amounts which were expended on each of the various claims. Point ten asserts that, as a matter of law, attorney fees may not be recovered in a suit to remove cloud on title, assault, false imprisonment, or interference with contractual rights.

The issue of attorney fees, by agreement, was not submitted to the jury, but was decided by the trial court at the November 17, 1987, hearing on the motion to enter judgment. At that hearing, both appellants and Durst stipulated what their respective attorneys' fees were and that those fees were necessary and reasonable. Appellants' counsel did not object to this stipulation, but rather expressly agreed, when questioned by the trial court, that the following amounts constituted their agreement, i.e., $53,035.48 for attorneys fees previously incurred, an additional $10,000.00 should the cause be appealed to the Court of Appeals, and an additional $5,000.00 should the cause be presented to the Supreme Court by application for writ of error. Based on that stipulation, the trial court awarded Lee Durst the above amounts for attorneys' fees. No findings of fact or conclusions of law were requested by appellants on the issue of attorneys' fees. Appellants, for the first time,[1] complained in their motion for new trial that the evidence was insufficient to support the award of attorneys' fees because the evidence failed to "segregate" the amounts expended on each of Durst's claims.

 Tex.Civ.Prac. & Rem.Code Ann. § 38.001 (Vernon 1986) (formerly Tex.Rev. Civ.Stat.Ann. art. 2226) permits recovery of attorneys' fees in suits based upon written contracts. *Lyons v. Montgomery,* 701 S.W.2d 641, 644 (Tex.1985); *Mead v. Johnson Group, Inc.,* 615 S.W.2d 685, 689 (Tex. 1981). Durst was successful in his breach of contract claim and is entitled to attorneys' fees. Further, appellants waived any complaint that the award of attorneys' fees may relate to other alleged causes by fail-

ing to timely object at the hearing. *Matthews v. Candlewood Builders, Inc.,* 685 S.W.2d 649, 650 (Tex.1985); *Bonham v. Flach,* 744 S.W.2d 690, 694 (Tex.App.—San Antonio 1988, no writ). Durst's counsel expressly stated at the hearing on the motion to enter judgment that "because of that breach of contract ... we're entitled to recover attorneys' fees which are in a stipulated amount." Moreover, the trial court expressly stated in the final judgment that Durst recover "$53,035.48 in attorneys' fees incurred by Lee A. Durst, Jr., arising out of and caused by breach of contract by the Counter–Defendant Tony Hauglum." We overrule appellants' eighth through tenth points of error.

By points of error one through seven, appellants complain about appellees' recovery of actual and exemplary damages on their suits to remove cloud on title. By point one, appellants contend the trial court erred in submitting special issues on damages to the jury because, as a matter of law, damages cannot be recovered in a suit to remove cloud on title. By points two and three, appellants contend that the trial court erred in granting judgment based on those special issues because there was no evidence and insufficient evidence to support the findings of damages for cloud on title. By point four, appellants assert that the trial court erred in overruling their motion for instructed verdict because there was no evidence to support the submission of those special issues. By points five and six, appellants argue both that the trial court erred as a matter of law in overruling their motion for instructed verdict and in submitting special issues on punitive damages because punitive damages may not be awarded in a suit to remove cloud on title. By point seven, appellants contend the trial court erred as a matter of law in submitting such special issues because there were no pleadings or evidence to support the submission of those issues.

---

**1.** Appellants did previously object in their November 3, 1987 objection to appellee's motion for judgment that "there is no theory which would allow for the recovery of attorney fees for the Counter–Plaintiff, Lee A. Durst, Jr.

However, appellants did not raise this issue of "segregation" either in that objection or at the subsequent hearing on appellees' motion for judgment.

In considering a "no evidence", "insufficient evidence" or "against the great weight and preponderance of the evidence" point of error, we will follow the well-established test set forth in *Pool v. Ford Motor Co.*, 715 S.W.2d 629 (Tex.1986); *Dyson v. Olin Corp.*, 692 S.W.2d 456 (Tex.1985); *Glover v. Texas General Indemnity Co.*, 619 S.W.2d 400 (Tex.1981); *Garza v. Alviar*, 395 S.W.2d 821 (Tex.1965); *Allied Finance Co. v. Garza*, 626 S.W.2d 120 (Tex. App.—Corpus Christi 1981, writ ref'd n.r. e.); and Calvert, *No Evidence and Insufficient Evidence Points of Error*, 38 Texas L.Rev. 361 (1960).

Lee Durst has conceded that the $5,000.00 awarded for cloud on title is not supported by the record. We have carefully reviewed the record and have come to a similar conclusion. We sustain appellants' first through seventh points of error insofar as they concern Durst.

The remainder of our discussion pertains to appellee Barbara Durst's recovery of damages for "cloud on title." We have carefully reviewed Barbara Durst's counterclaim and hold that it was sufficient to put appellants on notice that they were being sued for "slander of title." We overrule appellants' first, fifth and sixth points of error.

■ In order for a party to recover in an action for slander of title, the party must allege and prove: (1) the utterings and publishing of disparaging words; (2) that they were false; (3) that they were malicious; (4) that special damages were sustained thereby; and (5) that the plaintiff possessed an estate or interest in the property disparaged. *See Williams v. Jennings*, 755 S.W.2d 874, 879 (Tex.App.— Houston [14th Dist.] 1988, no writ); *Clark v. Lewis*, 684 S.W.2d 161, 163 (Tex.App.— Corpus Christi 1984, no writ); *see also Hurlbut v. Gulf Atlantic Life Insurance Co.*, 749 S.W.2d 762, 766 (Tex.1987). However, any communication, oral or written, uttered or published in the course of a judicial proceeding cannot be made the basis of a civil action for slander of title. *See Reagan v. Guardian Life Insurance Co.*, 140 Tex. 105, 166 S.W.2d 909, 912 (1942);

*Murren v. Foster*, 674 S.W.2d 406, 411 (Tex.App.—Amarillo 1984, no writ); *Louis v. Blalock*, 543 S.W.2d 715, 718 (Tex.Civ. App.—Amarillo 1976, writ ref'd n.r.e.). This necessarily includes all motions and affidavits filed in a case before a court having jurisdiction. *See Tsesmelis v. Sinton State Bank*, 53 S.W.2d 461, 464 (Tex. Comm'n App.1932, judgm't adopted); *Hott v. Yarbrough*, 112 Tex. 179, 245 S.W. 676, 679 (1922, opinion adopted); *Kropp v. Prather*, 526 S.W.2d 283, 286–88 (Tex.App. —Tyler 1975, writ ref'd n.r.e.). Therefore, the question of the falsity or of the malicious intent behind the filing of a suit are not competent evidence to prove slander of title.

Barbara Durst's and Durst Exploration Company's pleadings in their counterclaim alleged that Hauglum has plead his cause of action in such a manner as to cast a cloud of title on all of appellees' oil and gas properties in Brazos, Burleson and Fayette counties; that Hauglum knew that the filing of such a suit would cause appellees' properties in those counties to become unmarketable for either sale or borrowing purposes; and that appellees were damaged because of their inability to collateralize such properties for loans. Appellees further plead in the counterclaim's supplemental pleadings that third parties would not deal with them because of Hauglum's suit; that Gil Savings turned down a loan request for $150,000.00 based on Hauglum's claims; and that "that is how [appellant Hauglum's] action has caused a cloud upon the properties." There was proof to support these allegations. Lastly, appellees plead that "the intentional and malicious unconscionable conduct that Counter–Plaintiffs complain of by Counter–Defendant is his filing of his suit against defendants and in trying to extract from Defendant's their lawful title to such oil and gas properties."

■ We have carefully reviewed the record, and have found no pleadings or other evidence of probative force to prove Hauglum uttered and published disparaging words which slandered appellees' title. Appellees have relied entirely on the fact

that appellant Hauglum filed this lawsuit as evidence of publication. Such evidence is not sufficient as a matter of law to prove slander of title. We sustain appellants' fourth and seventh points of error as to Barbara Durst and Durst Exploration Company.

In light of our disposition of appellants' points of error relative to slander of title, appellants' points of error two and three relating to actual damages will not be addressed as they are not dispositive of this appeal. Tex.R.App.P. 90(a).

Since punitive damages are contingent on a finding of actual damages from the underlying tort, Barbara Durst and Durst Exploration Company also may not recover the punitive damages awarded by the trial court based on the alleged slander of title. *Nabours v. Longview Savings & Loan Assoc.*, 700 S.W.2d 901, 904 (Tex.1985); *Amoco Production Co. v. Alexander*, 622 S.W.2d 563, 571 (Tex.1981).

By their twentieth point of error, appellants contend the trial court erred in refusing to admit appellants' exhibits 76 through 79 into evidence. Appellants argue that since numerous "other exhibits" which were prepared as settlement documents were admitted into evidence, appellees waived any objection to the admission of appellants exhibits 76 through 79. Appellants further argue that these exhibits, 76 through 79, were relevant because they went to the ultimate issue of "whether the parties intended and were aware of their obligations with respect to [appellant] Tony Hauglum as to all of the wells in the Bryan–Woodbine area."

The record reveals that both appellants' exhibits 76 through 79 and the "other exhibits" referred to above were all created during the course of settlement negotiations. Appellants' exhibits 76 through 79 are flow charts which track how various assignments of interest were made and show how various overriding royalty interests were carved out of Barbara Durst's holdings. The "other exhibits" which were admitted into evidence are the various 1.125% overriding royalties assigned to Lee

Durst by Barbara Durst based on those diagrams.

Contrary to appellants' argument, appellees have not waived their objections to the admission of appellants' exhibits 76 through 79. Both parties expressly objected that those documents were created during settlement negotiations and were therefore inadmissible. Barbara Durst also objected to the admission of each of the "other exhibits" referred to by appellant on the same grounds.

Since these "other exhibits" constituted partial assignments of interest which were recorded in the deed records for the respective counties, they were "otherwise discoverable" and not subject to the Tex.R.Civ.Evid. 408 exclusion. On the other hand, appellants exhibits 76 through 79 were offered solely for the purpose of proving Barbara Durst's liability. These exhibits were not offered to show bias, prejudice or even interest of a party such is present in a "Mary Carter" agreement. *See Scurlock Oil Co. v. Smithwick*, 724 S.W.2d 1, 3–4 (Tex.1986); *Missouri Pacific Railroad Co. v. Huebner*, 704 S.W.2d 353, 356 (Tex.App.—Corpus Christi 1985, writ ref'd n.r.e.). Therefore, they were properly excluded by the trial court. *Town East Ford Sales, Inc. v. Gray*, 730 S.W.2d 796, 808–809 (Tex.App.—Dallas 1987, writ ref'd n.r.e.); *Bounds v. Scurlock Oil Co.*, 730 S.W.2d 68, 70 (Tex.App.—Corpus Christi 1987, no writ). Moreover, even if the trial court did err in excluding appellants' exhibits 76 through 79, the record as a whole reveals that it was not reasonably calculated to cause and probably did not cause the rendition of an improper verdict. *See Birchfield v. Texarkana Memorial Hospital*, 747 S.W.2d 361, 365 (Tex.1987); Tex.R. App.P. 184(b). In fact, appellants admit in their brief that "the same evidence" came in at trial in the form of assignments; i.e., the other exhibits referred to above. Thus, appellants' exhibits 76 through 79 were merely cumulative of other evidence. *Ballard v. King*, 652 S.W.2d 767, 769–70 (Tex. 1983); *Ford Motor Co. v. Nowak*, 638 S.W. 2d 582, 590 (Tex.App.—Corpus Christi

1982, writ ref'd n.r.e.). We overrule appellants' twentieth point of error.

We REVERSE and RENDER that portion of the trial court's judgment which awards damages to appellees based on the clouding of their respective titles. We AFFIRM the remainder of the trial court's judgment.