<HTML>

<HEAD>

<META NAME="Generator" CONTENT="WordPerfect">

<TITLE></TITLE>

</HEAD>

<BODY TEXT="#000000" LINK="#0000ff" VLINK="#551a8b" ALINK="#ff0000" BGCOLOR="#c0c0c0">

NUMBER 13-09-00548-CV

COURT OF APPEALS

THIRTEENTH DISTRICT OF TEXAS

CORPUS CHRISTI - EDINBURG  

                                                                                                                     

CONSUMER PORTFOLIO SERVICES, INC., Appellant,

v.

JUDITH OBREGON,         Appellee.

                                                                                                                       

On appeal from the County Court at Law No. 2

of Hidalgo County, Texas.

                                                                                                                     

MEMORANDUM OPINION

Before Justices Yañez, Rodriguez, and Garza

Memorandum Opinion by Justice Rodriguez

This appeal arises from a dispute over compliance with the parties' Rule 11

settlement agreement.  See Tex. R. Civ. P. 11.  At issue is the trial court's denial of

appellant Consumer Portfolio Services, Inc.'s (CPS) motion for summary judgment and

granting of appellee Judith Obregon's motion for summary judgment.  By three issues,

CPS argues that the trial court erred in:  (1) granting Obregon's motion for summary

judgment based on CPS's alleged breach of the settlement agreement by failing to make

payment of $3,000.00 within twenty days of December 5, 2008; (2) denying CPS's motion

for summary judgment based on Obregon's alleged breach of the settlement agreement

by repudiation and refusal to execute a release of liability upon tender; and (3) awarding

attorney's fees to Obregon.  We affirm in part, reverse in part, and remand for further

proceedings. I.  Background

On November 28, 2007, Obregon filed her original petition against Rio Grande

Valley Motors, Inc. (RGVM) and CPS, alleging claims arising out of the purchase of a

motor vehicle from RGVM.  In her subsequent amended complaints on September 8, 2008

and November 20, 2008, Obregon claimed RGVM failed to inform her that the vehicle she

purchased had been previously damaged and that CPS, a consumer finance company that

was assigned the retail sales installment contract executed between RGVM and Obregon,

engaged in unfair debt collection practices by misrepresentation of the status of a

consumer debt.  

In early December 2008, CPS gave RGVM written authority to negotiate a

settlement agreement on its behalf with Obregon.  On December 4, 2008 and December

5, 2008, a series of fax transmissions were exchanged between RGVM and Obregon in

an attempt to reach a settlement agreement.  Fax #1 was sent on December 4, 2008, from

RGVM to Obregon, offering the following:  

On behalf of my client and CPS, Inc. we hereby extend a joint settlement

offer of $12,000.00.  CPS will wipe out the deficiency and delete the trade

line from the credit report.  A tri-party release will be executed by all.  

On December 5, 2008, Obregon counteroffered with Fax #2:  

In response to the Defendants' joint offer, we counter at $12,500.00 plus

deletion of trade line/clearance/release of any debt balance, payable within

20 days.  I believe $12,500.00 represents the midpoint of Plaintiff's demands

and Defendants' last offer.

 

RGVM responded on December 5, 2008, to the counteroffer with Fax #3:

This Rule 11 Agreement will confirm we have reached a settlement between

Defendants and your client Judith Obregon in the amount of $12,500.00 plus

deletion of trade line/clearance/release of any debt balance.  This settlement

shall be payable within 20 days.  If this confirms our agreement, please sign

below and return via fax.  

Obregon signed a copy of RGVM's response and returned it via Fax #4.  RGVM and CPS

agreed that RGVM would be responsible for payment of $9,500.00 and CPS would be

responsible for $3,000.00. (1)  

On December 11, 2008, RGVM sent a check to Obregon for the sum of $9,500.00

with a letter indicating that CPS was "working on the settlement documents."  On

December 18, 2008, CPS sent the proposed settlement documents, entitled "Confidential

Compromise Settlement, Indemnity Agreement and Complete Release of All Claims,"

(CSA) to Obregon via Federal Express.  CPS contends, and Obregon does not dispute,

that the proposed settlement documents were delayed due to CPS mistakenly addressing

the package to Obregon's counsel's prior address and that they arrived on December 24,

2008.

At 4:56 p.m. on December 24, 2008, CPS received a letter from Obregon by fax that

contained the following:

Thank you for your settlement agreement received by my office today.  

Unfortunately, your client did not pay per the agreed time deadline, and we

therefore consider your client in breach in the amount of $3,000.00.  We will

release such claim if the sum of $3,500.00 is received on or before

December 31, 2008. . . .  

I am having my client execute the CSA except for two changes

(attached).  The first relates to the deadline established by written

agreement; 20 days from December 5, 2008, which has not been altered by

any agreement.  Second, the Release excludes release for any breach of the

agreement itself.

Accompanying the faxed letter were two revised pages of the CSA.  On one page, the

settlement payment terms were scratched through and changed from an agreement to pay

"within 20 days of the date of this agreement" to "within 20 days of Dec. 5, 2008."  On the

revised second page, under the release portion of the CSA, the amendment "Plaintiff

Obregon does not release breach of this agreement" was added.  This version of the CSA

did not include a signature and was not sent in its entirety.  

On December 29, 2008, CPS responded to Obregon by faxed letter stating that:

In response to your letter received by fax at 4:56 p.m. on December

24, 2008, there has been no breach of any settlement agreement by my

client.  We were at all times after December 19, 2008, prepared to forward

a check representing settlement of this matter to you upon receipt of the

settlement agreement executed by your client.  A copy of the check payable

to you and your client dated December 16, 2008, is attached.  Any delay in

your client receiving the settlement fund prior to December 25, 2008, was

solely as a result of absence of indication of approval of the settlement

agreement sent to you via Federal Express on December 19, 2008.   

Please let me know whether you wish to proceed with the settlement

and, if so, please provide me with a fax of the settlement agreement

executed by your client to be followed by the original.  Upon receipt of an

executed agreement, I will forward the check.  Otherwise, please let me

know as soon as possible if your client has decided not to proceed with the

settlement of this matter.

On December 29, 2008, Obregon responded that the "Rule 11 agreement provided

that settlement funds were to be received by December 25, 2008," that "if [CPS] wanted

to condition paying on receipt of a signed settlement agreement as a condition precedent,

that language should have been included in the Rule 11 [agreement] and the Rule 11

[agreement] is devoid of any such requirement," and that "I stand by my prior demand. .

. .  That is, my client stands by the settlement, but calls your client in breach."  On January

5, 2009, CPS received from Obregon a signed copy of the entire CSA with the two

modifications:  payment "within 20 days of Dec. 5, 2008" and "Plaintiff Obregon does not

release breach of this agreement." (2)  

On January 7, 2009, Obregon filed her third amended petition, wherein she dropped

all previous claims and alleged only breach of contract. (3)  On January 9, 2009, CPS filed

a motion to enforce the settlement agreement.  On January 28, 2009, Obregon filed a

traditional motion for summary judgment on her breach of contract claim; the ground for

Obregon's motion was that her evidence clearly established CPS's breach of the

settlement agreement. (4)  Also on January 28, 2009, CPS filed a counterclaim to Obregon's

third amended petition, alleging that Obregon was in breach of contract.   On February 18,

2009, CPS filed a traditional motion for summary judgment on its breach of contract claim;

the ground for CPS's motion was that it established the elements of its breach of contract

claim as a matter of law. (5)  On September 2, 2009, the trial court entered a final judgment

granting Obregon's motion for summary judgment and denying CPS's motion; ordered

deletion of trade line from the credit report and release of any debt balance; and awarded

$3,000.00 in damages and $8,500.00 in attorney's fees to Obregon.  This appeal followed.

II.  Traditional Summary Judgment Standard of Review

We review the trial court's granting or denial of a traditional motion for summary

judgment de novo.  Valence Operating Co. v. Dorsett, 164 S.W.3d 656, 661 (Tex. 2005);

Branton v. Wood, 100 S.W.3d 645, 646 (Tex. App.-Corpus Christi 2003, no pet.).  When

reviewing a traditional summary judgment, we must determine whether the movant met its

burden to establish that (1) no genuine issue of material fact exists and (2) the movant is

entitled to judgment as a matter of law.  Tex. R. Civ. P. 166a(c); Provident Life and Acc.

Ins. Co. v. Knott, 128 S.W.3d 211, 215 (Tex. 2003) (citing Haase v. Glazner, 62 S.W.3d

795, 797 (Tex. 2001)); Sw. Elec. Power Co. v. Grant, 73 S.W.3d 211, 215 (Tex. 2002).  In

reviewing a traditional summary judgment, we consider all the evidence in the light most

favorable to the nonmovant, indulging every reasonable inference and resolving any

doubts in favor of the nonmovant.  Goodyear Tire & Rubber Co. v. Mayes, 236 S.W.3d

754, 756 (Tex. 2007) (per curiam).  "A party moving for summary judgment must establish

its right to summary judgment on the issues expressly presented to the trial court by

conclusively proving all elements of its cause of action or defense as a matter of law."  

Elliot-Williams Co. v. Diaz, 9 S.W.3d 801, 803 (Tex. 1999) (citations omitted); see also Tex.

R. Civ. P. 166a(b), (c).  The summary judgment movant has conclusively established a

matter if reasonable people could not differ as to the conclusion to be drawn from the

evidence.  See City of Keller v. Wilson, 168 S.W.3d 802, 816 (Tex. 2005).

Ordinarily, when both sides move for summary judgment and the trial court grants

one motion and denies the other, the court reviews the motions and all summary judgment

evidence and renders the judgment that the trial court should have rendered.  SAS Inst.,

Inc. v. Breitenfeld, 167 S.W.3d 840, 841 (Tex. 2005) (per curiam); Barrand, Inc. v.

Whataburger, Inc., 214 S.W.3d 122, 129 (Tex. App.-Corpus Christi 2006, pet. denied)

(citing Comm'rs Court v. Agan, 940 S.W.2d 77, 81 (Tex. 1997)). "However, we may also

reverse the judgment and remand the cause when we find that course proper."  K3 Enters.

v. McDaniel, 8 S.W.3d 455, 458 (Tex. App.-Waco 2000, pet. denied) (citations omitted).

III.  Applicable Law

A settlement agreement may be enforceable as a contract.  See Ford Motor Co. v.

Castillo, 279 S.W.3d 656, 663 (Tex. 2009).  In order to be considered enforceable as a

contract, the settlement agreement must have complied with Texas Rule of Civil Procedure

11.  Padilla v. LaFrance, 907 S.W.2d 454, 460 (Tex. 1995).  Rule 11 states that "no

agreement between attorneys  or parties touching any suit pending will be enforced unless

it be in writing, signed and filed with the papers . . . ."  Tex. R. Civ. P. 11.  In addition, a

Rule 11 agreement follows the requirements of the statute of frauds, including the

allowance that a written memorandum need not be contained in a single document.  See

Padilla, 907 S.W.2d at 460.  

If an agreement complies with Rule 11, then the party seeking to enforce the

agreement may amend its pleading and add a breach of contract claim.  See Mantas v.

Fifth Court of Appeals, 925 S.W.2d 656, 658 (Tex. 1996) (orig. proceeding) (per curiam).  

The essential elements for a breach of contract claim are the following:  (1) existence of

a valid contract; (2) performance or tendered performance by the plaintiff; (3) a breach by

the defendant; and (4) damages sustained by the plaintiff as a result of the breach.  

Sauceda v. GMAC Mortgage Corp., 268 S.W.3d 135, 140 (Tex. App.-Corpus Christi 2008,

no pet.).

Under the doctrine of repudiation or anticipatory breach, a party's performance

under a contract is excused if the opposing party has repudiated.  Burford v. Pounders,

145 Tex. 460, 199 S.W.2d 141, 144-45 (1947).  A repudiation or anticipatory breach occurs

when a party absolutely repudiates the obligation, without just excuse, and the other party

is damaged by the repudiation.  Barrand, Inc., 214 S.W.3d at 140.  It is conduct that

exhibits an unwavering intention to abandon, renounce, and refuse performance of the

contract.  In re Braddock, 64 S.W.3d 581, 585 (Tex. App.-Texarkana 2001, no pet.);

Hauglum v. Durst, 769 S.W.2d 646, 651 (Tex. App.-Corpus Christi 1989, no writ).  

Repudiation of a contract may consist of either words or actions by a party to a contract

that indicate an intention that the party is not going to perform the contract according to its

terms in the future.  Hauglum, 769 S.W.2d at 651.  

IV.  Analysis

To determine whether the competing motions for summary judgment on breach of

contract were correctly disposed of, we must first decide whether Obregon, CPS, and

RGVM entered into a valid and enforceable Rule 11 settlement agreement.    See Reilly

v. Rangers Mgmt., Inc., 727 S.W.2d 527, 529 (Tex. 1987).  Second, we must address

whether the Rule 11 agreement, if any, is ambiguous.  Id.  If a valid, unambiguous Rule 11

agreement exists, we then review the merits of the competing summary judgment motions

de novo.  Id.A.  The Rule 11 Agreement

Obregon attached to her motion Fax #4, the December 5, 2008 countersigned letter,

as evidence of the parties' Rule 11 settlement agreement, apparently contending in her

motion that it alone contained the material terms of the agreement.  CPS contends that if

Fax #4 is the entire Rule 11 agreement, then it fails to comply with general contract

principles because the agreement lacks the mutual consideration that is necessary for a

valid and enforceable contract.  Rather, CPS contends that Fax #4 fails to comprise the

entire Rule 11 agreement, which was instead negotiated through the series of faxed letters

(Faxes #1-4) between December 4, 2008 and December 5, 2008.  We agree with CPS.

The material terms in a settlement agreement are:  (1) a promise to pay in an

exchange for release of liability and (2) payment.  Padilla, 907 S.W.2d at 461; see Cherco

Props., Inc. v. Law, 985 S.W.2d 262, 266 (Tex. App.-Fort Worth 1999, no pet.); see also

Two Bros. Trucking v. Modine Mfg. Co., No. 13-07-00427-CV,  2009 WL 2192582, at *2

(Tex. App.-Corpus Christi July 23, 2009, no pet.) (mem. op.).  Importantly, only Fax #1, the

original offer from RGVM and CPS on December 4, 2008, included that "[a] tri-party

release will be executed by all."  Thus, the countersigned letter alone does not contain the

essential element of consideration--a promise to pay in exchange for a release of liability.  

Only when the faxed correspondences of December 4, 2008 and December 5, 2008, are

read together as one written memorandum do they include the consideration and terms

necessary for a valid contract based on a mutuality of obligations.  See ABB Kraftwerke

Aktiengesellschaft v. Brownsville Barge & Crane, Inc., 115 S.W.3d 287, 293 (Tex.

App.-Corpus Christi 2003, pet. denied).  Therefore, we conclude that the material terms

of the parties' Rule 11 settlement agreement are contained not in Fax #4 alone, as argued

by Obregon, but as set out in Faxes #1-4, the series of faxed transmissions between

December 4, 2008 and December 5, 2008.  See Padilla, 907 S.W.2d at 460 (a written

memorandum need not be contained in a single document).  

"A settlement agreement is a contract, and its construction is governed by legal

principles applicable to contracts generally."  Donzis v. McLaughlin, 981 S.W.2d 58, 61

(Tex. App.-San Antonio 1998, no pet.).  Specifically, when construing a Rule 11 settlement

agreement, we apply the principles of contract interpretation to determine ambiguity.  

Padilla, 907 S.W.2d at 460.  If a contract is capable of more than one reasonable

interpretation, it is ambiguous; if, however, the contract can be given a certain or definite

legal meaning, then it is not ambiguous and we will construe it as a matter of law.  See

Coker v. Coker, 650 S.W.2d 391, 393 (Tex. 1983); see also Skulemowski v. Zavaletta, No.

13-04-673-CV, 2007 WL 475319, at *4 (Tex. App.-Corpus Christi Feb. 15, 2007, pet.

denied) (mem. op.).  When a contract contains an ambiguity, the granting of a motion for

summary judgment is improper because the interpretation of the contract is a question of

fact for the jury.  Reilly, 727 S.W.2d at 529.  

With regard to the interpretation of the Rule 11 settlement agreement at issue, the

parties here contend--and we agree--that the agreement is unambiguous; they merely

offer different interpretations of its meaning.  See Dynegy Midstream Servs., L.P. v.

Apache Corp., 294 S.W.3d 164, 168 (Tex. 2009) ("A contract is not ambiguous simply

because the parties disagree over its meaning.").  Obregon's interpretation is that payment

of the settlement had to be made "within 20 days" of December 5, 2008.  CPS's

interpretation is that payment was to be made "within 20 days" of execution of the "tri-party

release executed by all."  

Our primary concern is to construe the contract to ascertain and give effect to the

parties' intentions as expressed in the document.  Frost Nat'l Bank v. L&F Distributors, Ltd.,

165 S.W.3d 310, 211-12 (Tex. 2005).  To determine parties' intentions, courts consider the

entire writing, seeking to harmonize and give effect to all contractual provisions.  Hofland

v. Fireman's Funds Ins. Co., 907 S.W.2d 597, 599 (Tex. App.-Corpus Christi 1995, no

writ).  The language used by the parties is to be given its plain, grammatical meaning

unless it appears that to do so would defeat the parties' intentions.  Lyons v. Montgomery,

701 S.W.2d 641, 643 (Tex. 1985).  

Based on our examination of the series of faxed letters that form the Rule 11

agreement, we conclude that the settlement agreement can be given a definite legal

meaning and thus construed as a matter of law.  See Coker, 650 S.W.2d at 393.  The

"payable within 20 days" term of the agreement does not render it ambiguous.  See Shaw

v. Kennedy, Ltd., 879 S.W.2d 240, 246 (Tex. App.-Amarillo 1994, no writ) (holding that

time of performance is not a material term of an agreement).  Rather, it is clear that the

parties intended to settle the lawsuit by CPS and RGVM providing payment of "$12,500.00

plus deletion of trade line/clearance/release of any debt balance" in exchange for release

of liability via the "tri-party release . . . executed by all."  

B.  Obregon's Motion for Summary Judgment

We have determined the existence of a valid contract and will assume, without

deciding, that Obregon showed performance or tendered-performance and damages.  

Nonetheless, we conclude that Obregon cannot show a breach by CPS.  See Sauceda,

268 S.W.3d at 140.  Obregon's motion for summary judgment was based on an

interpretation of the Rule 11 settlement agreement that considered a breach to have

occurred if actual payment was not made "within 20 days" of December 5, 2008.  However,

because the agreement did not stipulate that time was of the essence, Obregon's

interpretation is erroneous. See Shaw, 879 S.W.2d at 246.  

Generally, time of performance is not a material term of an agreement and "any

intention to make time of the essence must be clearly manifested in the contract."  Id.  "The

fact that [a] contract states a date for performance does not, of itself, mean that time is of

the essence."  Argos Res., Inc. v. May Petroleum Inc., 693 S.W.2d 663, 664-65 (Tex.

App.-Dallas 1985, writ ref'd n.r.e.) (quoting Laredo Hides Co., Inc. v. H & H Meat Prods.

Co., Inc., 513 S.W.2d 210, 217 (Tex. App.-Corpus Christi 1974, writ ref'd n.r.e.)).  In order

to make time of the essence, a contract must so provide by express stipulation or there

must be something in the nature of the subject matter or connected with the purpose of the

contract and the circumstances surrounding it which makes it apparent that the parties

intended that the contract be performed at or within the time specified.  Laredo Hides Co.,

Inc., 513 S.W.2d at 216.  

When time of performance is not stipulated, the law will imply a reasonable time.  

Moore v. Dilworth, 142 Tex. 538, 179 S.W.2d 940, 942 (1944); see Fitzsimmons v.

Anthony, 716 S.W.2d 719, 720 (Tex. App.-Corpus Christi 1986, no writ) (agreeing with the

trial court that "in the absence of 'time of the essence' provisions and stipulated

performance dates, parties are entitled to a reasonable time to perform their part of the

contract").  After reviewing the parties' Rule 11 settlement agreement, we find nothing in

the nature of the subject matter connected with settlement or the circumstances

surrounding the agreement that make it apparent that the contract needed to be performed

at or within the time specified. (6)  See Laredo Hides Co., Inc., 513 S.W.2d at 216.  Thus,

time of performance by CPS was implied as a reasonable time, and CPS did not breach

the parties' Rule 11 settlement agreement by failing to make actual payment on December

24, 2008.  See Fitzsimmons, 716 S.W.2d at 720.  

Time was not of the essence; therefore, a lack of actual payment "within 20 days"

from the December 5, 2008 agreement did not constitute a breach.  We hold the trial court

erred in granting Obregon's motion for summary judgment because she did not

conclusively prove an essential element of her claim as a matter of law.  See Elliot-Williams

Co., 9 S.W.3d at 803; see also Tex. R. Civ. P. 166a(b), (c).  We sustain CPS's first issue

on appeal.   

C.  CPS's Motion for Summary Judgment

For CPS to prevail on its motion for summary judgment, it must establish that no

material fact issues exist on its breach of contract claim and must conclusively prove all

elements of breach of contract as a matter of law.  See Tex. R. Civ. P. 166a(b), (c); Elliot-Williams Co., 9 S.W.3d at 803; Sauceda, 268 S.W.3d at 140.  As previously discussed, the

parties had an enforceable contract based on the series of faxed letters between

December 4, 2008 and December 5, 2008, that comprised the Rule 11 settlement

agreement.  See Padilla, 907 S.W.2d at 460.  Thus, the first element has been satisfied.

It is also clear that CPS showed it satisfied its obligation to tender performance by

being "ready, willing, and able to make payment" to Obregon.  See Perry v. Little, 419

S.W.2d 198, 200 (Tex. 1967); Sauceda, 268 S.W.3d at 140.  CPS was not required to

make actual presentment and payment of $3,000.00 "within 20 days" of December 5, 2008

because it was not stipulated that time was of the essence.  See Shaw, 879 S.W.2d at

246.  In addition, the nature of the Rule 11 agreement involved concurrent consideration;

CPS's obligation for tender of performance was to make clear to Obregon that CPS was

willing and able to deliver the $3,000.00.  See Perry, 419 S.W.2d at 200 ("[I]f the contract

contemplates concurrent acts, it is sufficient to put one party in default [if] the other party

is ready, willing, and offers to perform his part of the contract . . . .  The actual production

of the . . . thing which the [party] is to give is . . .  unnecessary.").  CPS provided evidence

in its motion for summary judgment that on December 29, 2008, CPS indicated in its faxed

letter its willingness to tender performance in exchange for release.  It is undisputed that

Obregon refused to accept payment and instead filed a breach of contract action against

CPS.  Thus, CPS satisfied the second element of its breach of contract claim.    

With regard to the third element, CPS argues that Obregon breached the parties'

Rule 11 settlement agreement by repudiation when Obregon faxed the December 24, 2008

letter that stipulated "your client did not pay per the agreed time deadline, and we therefore

consider your client in breach in the amount of $3,000.00. . . .  We will release such claim

if the sum of $3,500.00 is received on or before December 31, 2008."  (Emphasis added.)  

CPS argues that Obregon repudiated by increasing the settlement sum an additional five-hundred dollars, thus indicating to CPS that Obregon did not intend to perform the contract

according to its terms in the future.  See Hauglum, 769 S.W.2d at 651.  We agree.

When Obregon insisted on additional payment in exchange for release of liability,

she changed a material term of the settlement agreement.  See Padilla, 907 S.W.2d at

461.  Obregon's conduct indicated an intention to abandon, renounce, and refuse

performance of the contract as to the agreed-upon material terms of the agreement.  See

In re Braddock, 64 S.W.3d at 585; Hauglum, 769 S.W.2d at 651.  "When one party

materially breaches a contract, the nonbreaching party is forced to elect between two

courses of action, i.e., continuing performance or ceasing performance."  Kennedy Ship

& Repair, L.P. v. Phan, 210 S.W.3d 11, 25 (Tex. App.-Houston [14th  Dist.] 2006, no pet.);

see Chilton Ins. Co. v. Pate & Pate Enters, Inc., 930 S.W.2d 877, 887-88 (Tex. App.-San

Antonio 1996, writ denied).  CPS chose to continue performance and informed Obregon

of its intention in the December 29, 2008 faxed letter stating that "there has been no

breach of any settlement agreement by my client.  We were at all times . . . prepared to

forward a check representing settlement of this matter to you upon receipt of the settlement

agreement executed by your client."  CPS was thus willing and able to perform.  See

DiGiuseppe v. Lawler, 269 S.W.3d 558, 593-94 (Tex. 2008).

In response to CPS's December 29, 2008 fax, Obregon alleged breach, demanded

an increase of the settlement amount agreed to in the Rule 11 agreement, and notified

CPS that two changes had been made on the CSA.  CPS received a signed copy of the

altered CSA on January 5, 2009.  However, agreement to the two modifications to the

CSA--that payment must be made "within 20 days of Dec. 5, 2008" and that "Plaintiff . . .

does not release breach of this agreement"--would have forced CPS to admit that it

breached the contract because twenty days from December 5, 2008 had already passed.  

Obregon's insistence on additional language that would force breach by CPS is further

evidence of repudiation.  See Hauglum, 769 S.W.2d at 651.  Thus, CPS established the

third element.         

However, CPS failed to conclusively prove the fourth and final element of its

claim--damages as a result of the breach by Obregon.  In its brief, CPS claims that it is

entitled to specific performance "by entry of an order requiring Obregon to execute a 'tri-party release.'"  Although in an action for breach of contract, a plaintiff can sometimes elect

an equitable remedy such as specific performance, see Stafford v. S. Vanity Magazine,

Inc., 231 S.W.3d 530, 535 (Tex. App.-Dallas 2007, pet. denied) (citing Kress v. Soules,

261 S.W.2d 703, 704 (Tex. 1953)) (other citations omitted), this statement in CPS's

appellate brief is its first mention of any injury other than attorney's fees incurred as a result

of Obregon's breach.  In its counterclaim, CPS alleged the following:

Plaintiff's failure to comply with the settlement agreement reached

between the parties has caused damages to CPS.  In particular, CPS has

been forced to expend attorney's fees to prepare and file a Motion to Enforce

Settlement Agreement and this Amended Counter-claim.  It is anticipated

that additional sums will be expended enforcing the settlement agreement.  

In its motion for summary judgment, CPS claimed the following:

CPS has suffered damages due to Plaintiff's breach of the December

4-5 Agreement by continuing to incur expenses for attorney[']s fees in this

action.  Had Plaintiff performed in accordance with the Dec. 4-5 Agreement,

these additional attorney[']s fees would have been avoided.  CPS incurred

attorney's fees in the amount of $13,500 as a result of Plaintiff's failure to

abide by the December 4-5 Agreement. . . .

. . . In summary, CPS established the elements of its breach of

contract claim by . . . establishing [(1) a valid contract, (2) tendered

performance, (3) breach, and (4)] damages by the fact that it has incurred

substantial attorney[']s fees in this matter . . . .

Finally, CPS did not argue at any of the various hearings on the motion to enforce and

motions for summary judgment that it suffered any injury as a result of Obregon's breach

other than the incurring of attorney's fees.  

"Attorney's fees are ordinarily not recoverable . . . as actual damages in and of

themselves."  Haden v. David J. Sacks, P.C., 222 S.W.3d 580, 597 (Tex. App.-Houston  

[1st Dist.] 2007), rev'd on other grounds, 266 S.W.3d 447 (Tex. 2008) (citing Tana Oil &

Gas Corp. v. McCall, 104 S.W.3d 80, 81-82 (Tex. 2003); Qwest Commc'ns Int'l, Inc. v.

AT&T Corp., 114 S.W.3d 15, 32-33 (Tex. App.-Austin 2003), rev'd in part on other

grounds, 167 S.W.3d 324 (Tex. 2005)).  A party "rel[ying] on assertions of non[-]

recoverable damages" alone, such as attorney's fees and expenses sustained in defending

a lawsuit and prosecuting a counterclaim, has presented a legal barrier to any recovery on

its suit for breach of contract.  See id. (citations omitted).  This is true even if all other

elements of the claim are proven.  See Tana Oil & Gas Corp., 104 S.W.3d at 82.

Here, CPS claimed no damages other than the attorney's fees it incurred as a result

of Obregon's breach, and we cannot consider CPS's assertion on appeal that it was

entitled to the equitable remedy of specific performance because it did not present the

issue to the trial court.  See Tex. R. Civ. P. 166a(c) ("Issues not expressly presented to the

trial court by written motion, answer or other response shall not be considered on appeal

as grounds for reversal."); McConnell v. Southside Indep. Sch. Dist., 858 S.W.2d 337, 341

(Tex. 1993) ("A motion must stand or fall on the grounds expressly presented in the

motion.").  Because the only form of actual damages sought by CPS in its counterclaim

was unrecoverable, see Haden, 222 S.W.3d at 597, CPS is unable to prove the final

element of its breach of contract counterclaim and was not entitled to summary judgment.  

See Elliot-Williams Co., 9 S.W.3d at 803; see also Tex. R. Civ. P. 166a(b), (c).  The trial

court therefore did not err in denying CPS's motion for summary judgment.  We overrule

CPS's second issue.

Having determined that the trial court erred in granting Obregon's motion for

summary judgment but did not err in denying CPS's motion, both parties' causes of action

remain live, and remand is the proper disposition of this appeal.  See K3 Enters., 8 S.W.3d

at 458.  Because we are remanding for further proceedings, we do not reach CPS's third

issue regarding attorney's fees.  See Tex. R. App. P. 47.1.

V.  Conclusion

We reverse the judgment of the trial court granting Obregon's motion for summary

judgment; affirm the judgment of the trial court denying CPS's motion for summary

judgment; and remand for further proceedings consistent with this opinion.

NELDA V. RODRIGUEZ

Justice

Delivered and filed the 4th

day of November, 2010.

1. CPS's counsel attested by affidavit that CPS agreed to pay $3,000.00 of the settlement amount.  

2. The notarization of Obregon's signature on the CSA indicates it was executed on December 26,

2008.

3. Obregon's claims against RGVM were severed from her cause of action against CPS and are not

before this Court on appeal.

4. In support of her motion, Obregon attached the following evidence:  (1) CPS's motion to enforce the

settlement agreement, which Obregon asserted contained judicial admissions by CPS; (2) the affidavit of

Obregon's counsel, in which he describes his fees and attests that (a) CPS never made payment of $3,000,

(b) CPS never tendered payment, (c) neither he nor his client rejected payment from CPS, and (d) he

delivered a release from Obregon to CPS; and (3) attachments to the affidavit, including (a) Fax # 4, the

counter-signed December 5, 2008 fax, (b) the December 24, 2008 letter from Obregon to CPS, and (c) the

revised CSA, which Obregon signed and returned to CPS on January 5, 2009.

5. In support of its motion, CPS attached the following evidence:  (1) Obregon's responses to CPS's

requests for production, which included as attachments (a) copies of Faxes #1-4, (b) Obregon's December

24, 2008 faxed letter to CPS, (c) CPS's December 29, 2008 response to Obregon's December 24 letter, and

(d) a copy of the revised CSA that Obregon signed and sent to CPS on January 5, 2009; (2) a copy of the

December 29, 2008 fax from Obregon to CPS; and (3) affidavit of counsel for CPS regarding his fees.

6. We note that Obregon's December 24, 2008 letter to CPS includes the following statement:  "As you

are aware, one inducement for [Obregon] to settle was the promise of payment of $12,500.00 by December

25, 2008."  In her brief, Obregon implies, though never directly states, that this--i.e., payment by

Christmas--was a circumstance indicating that time was of the essence.  We do not believe, however, that

this one line in a letter that does not form any basis of the contract indicates a "manifest[ation] of intention"

at the time of the contract that all parties "desired time of payment to be vital or that late payment would be

ground for cancellation."  Laredo Hides Co., Inc. v. H & H Meat Prods. Co., Inc., 513 S.W.2d 210, 218 (Tex.

App.-Corpus Christi 1974, writ ref'd n.r.e.).

</BODY>

</HTML>